### KEELER *v.* NEW YORK STATE MUT. BEN. ASS'N.

*(Supreme Court, General Term, Fourth Department.    November, 1892.)*

1. **INSURANCE—NOTICE OF ASSESSMENT—EVIDENCE—QUESTION FOR JURY.**

   In an action on a life insurance policy, conditioned to be void if any assessment was not paid within 30 days from notice thereof, and that a notice by mail, directed to assured's address, as appearing on defendant's books, should be deemed a legal notice, defendant pleaded forfeiture for nonpayment of an assessment. S., guardian of the infant beneficiary, testified that after the policy was issued she and assured went to defendant's office, and requested B., its manager, to address notices of assessment to witness, which he agreed to do; that thereafter, from July, 1885, until September, 1887, the notices were sent to witness, which she paid, when she learned that one C. had paid an assessment for assured; that she then told defendant's officers that C. had no right to pay the assessments, and that something was wrong; that such officers stated that it was all right, and they would not allow the policy to lapse; that if any assessment was not paid they would telegraph her, so she could pay it in time; that no notice of the assessment, the nonpayment of which defendant claimed to operate as a forfeiture, was sent to her; and that she had no knowledge thereof until two days after the expiration of the time limited for its payment, when defendant refused to accept the same. Two of defendant's officers denied making any agreement to send the notices to S., and testified that in September, 1887, assured notified them to send all notices to him. The court allowed the jury to determine whether assured notified defendant in September, 1887, to send the notices to him, and charged that, if they so found, plaintiff could not recover. *Held* that, under all the evidence, the ruling was proper, though the testimony of defendant's officers as to the notice given to assured was not contradicted.

2. **SAME—INSTRUCTIONS.**

   In such case it was proper to instruct the jury that if defendant, knowing the interest of S. in the policy, agreed to give her notice of assessments in time to enable her to pay, and prevent a lapse, and afterwards failed to do so, it could not ignore the agreement, and lapse the policy in violation thereof.

3. **SAME—CROSS-EXAMINATION.**

   In such case, where defendant called C., who testified on direct examination that when the notice of assessment, the nonpayment of which defendant relied on as a forfeiture, was received by assured, witness lived in assured's family, and took care of him, it was proper, on cross-examination, to inquire as to why witness had to "take care of" assured.

Appeal from circuit court, Onondaga county.

Action on an insurance policy by Clinton R. Keeler, by Dorcas A. Stalker, guardian, against the New York State Mutual Benefit Association. Plaintiff had judgment for $3,262.50, from which, and an order denying a motion on the minutes for a new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Hancock, Beach & Devine, for appellant. Burdick, Jones & McGowan, for respondent.

MERWIN, J. This action is upon a certificate of membership issued by the defendant on the 30th August, 1883, to Nelson R. Keeler. This provided that, upon the death of Keeler and the performance of certain conditions, the sum of $3,000 should be paid to Julia, his wife, if she survived him, otherwise to his son, Clinton R. Keeler, if he survived, otherwise to his heirs or beneficiaries. The certificate also contained a provision "that the said member agrees to pay all assessments and annual dues at the office of the association, or to their authorized collector, within thirty days from the date of notice. A notice directed to a member's post-office address, as appearing upon the books of the association, shall be deemed a legal notice." Nelson R. Keeler died on March 6, 1890, and his wife died February 12, 1886. The contest in this case is over the question whether the certificate or policy lapsed by reason of the nonpayment of an assessment of $10.44, made by defendant on May 1, 1888, and payable on or before June 5, 1888. The defendant showed that on May 1, 1888, a notice of the assessment was mailed by its officers to Keeler at No. 306 South Salina street, Syracuse, that being the address of Keeler, as stated in his application for membership. The assessment was not paid at the time required, but on the 7th June, 1888, Mrs. Stalker, upon behalf of the plaintiff, went to the office of the defendant, and offered to pay it, but the defendant declined to receive it, upon the ground that it was too late, and the certificate had already lapsed. It appears that on the 16th July, 1885, Keeler and his wife, by an instrument in due form, under seal and acknowledged, committed to Mrs. Stalker the guardianship of their boy, Clinton R. Keeler, during his minority, he then being six years old, and Mrs. Stalker, upon her part, agreed to support and educate the boy during the term, with the understanding, however, that she should be compensated for such care and support out of any property or estate of the boy, and Mrs. Stalker, by writing duly acknowledged, accepted the trust. Mrs. Stalker testifies that soon after this she went with Mr. and Mrs. Keeler to the office of the defendant, and saw Mr. Baxter, who was the secretary and general manager of the defendant; that Mr. Keeler then introduced her to Mr. Baxter, and told him that she was the guardian of the child, and had the certificate, and he wanted them in the future to send the notices of the assessments to her, and Baxter replied that they would do so; that Keeler then gave as his reason for this that because of his ill health he might not be able to attend to it himself; that it was difficult for him to walk, and he wished the assessments sent to Mrs. Stalker, so that they would never lapse, and she should take care of the policy for the boy; that her name and address were then taken down at the office; that in the spring of 1886, after the death of Mrs. Keeler, the witness and Mr. Keeler were again at the office, and Mr. Keeler again requested that notices of assessments should be sent to Mrs. Stalker, and they agreed to do so. These interviews are in the main denied on the part of the defendant, though it is conceded that notices were for a time sent to Mrs. Stalker. She testifies that from the time of the first interview until about September, 1887, notices were sent to her, and that she paid the assessments; that in September, 1887, she learnt that an assessment had been paid by one Van Camp, who then lived with Keeler, and that she then went to the office, and inquired about it, and was told that Van Camp paid it because it was too much trouble for her to come from Auburn, where she then lived;

that she told them there was something wrong about it, and Van Camp had no right to pay it, and they replied it was all right, they would not let it lapse, and that if any assessment was not paid before the last day they would let her know by telegraph, so that she could pay it in time; that no notice was sent her of the assessment of May, 1888, and she did not learn of it until June 7th, two days after the expiration of the time for payment; and that then she immediately went to the office, and they then claimed a lapse. The officers of the defendant denied the making of any arrangement such as testified to by Mrs. Stalker, and also gave testimony to the effect that in or about September, 1887, Mr. Keeler came alone to the office, and requested the notices to be sent to him at his own residence, No. 306 South Salina street. The court left it to the jury to say whether this request was in fact made, and charged them that, if they found it was made, the plaintiff could not recover. The defendant claims that upon this subject there was no question of fact for the jury, as the two witnesses for the defendant were not contradicted. Still the circumstances of the case were such that it was for the jury to pass upon the credibility of the witnesses, and the case upon that subject was properly left with the jury.

As to the arrangement between the defendant and Mr. Keeler and Mrs. Stalker, or between the defendant and Mrs. Stalker, the court left it to the jury to find whether there were any such arrangements, and, in substance, charged that if the defendant, knowing of the interest that Mrs. Stalker had in the policy as guardian for the beneficiary, agreed to give her notice in time to enable her to pay and prevent a lapse, and afterwards failed to do this, they could not then say that they were under no obligation to keep that agreement, and could lapse the policy while violating the agreement. The charge in this respect was not excepted to, but, under the motion for nonsuit and the exception to its denial, the defendant may raise the question that there is nothing in the case to relieve the plaintiff from the effect of the nonpayment of the assessment within the time limited by the notice. The jury had a right to find upon the evidence that the defendant, knowing that Mrs. Stalker was the guardian for the beneficiary, and had the certificate, made with her an arrangement to notify her of any assessment in time for her to pay before the expiration of the limit, and that by reason of the failure of the defendant to perform this agreement Mrs. Stalker did not learn of the assessment in time to pay on or before June 5th. If the jury so found, the defendant had no right to claim a lapse because the assessment was not paid at the exact date. *Leslie* v. *Insurance Co.*, 63 N. Y. 27; *Ripley* v. *Insurance Co.*, 30 N. Y. 164; *Kenyon* v. *Association*, 122 N. Y. 247, 25 N. E. Rep. 299; 2 May, Ins. (3d Ed.) § 360 C. In the *Leslie Case* it was held that where a party to a contract, who is entitled to a forfeiture in case of nonperformance by the other party of a condition therein, by his own act induces such other to omit strict performance within the time limited, he cannot exact the forfeiture, if the party in technical default, with reasonable diligence, thereafter performs or offers to perform. We think that the motion for nonsuit was properly denied.

The defendant claims error in two rulings in the admission of evidence. The defendant called as a witness James Van Camp, who testified, among other things, that in May, 1888, he resided in the family with Mr. Keeler, and took care of him, and that on May 1, 1888, a notice of assessment came there addressed to Nelson R. Keeler, No. 306 South Salina street. Upon his cross-examination he was asked the question: "What do you mean by taking care of him? Was he sick enough so you had to?" This was objected to as immaterial, and objection overruled, and exception taken. The answer was: "He was getting insane. He would have fits once in a while, and he needed care then." The inquiry as put related to a matter the witness had testified to on his direct. He was also a member of the defendant, and therefore had

an interest in the impending liability. He had before paid one or more assessments for Keeler, but for some undisclosed reason failed to pay this. It was proper to learn then the situation of Keeler.

Mr. Garrett, a witness for plaintiff upon the rebuttal, was allowed to testify, over defendant's objection and exception, that on the 5th July, 1888, he was appointed committee of Mr. Keeler, as a lunatic. This was with the view of showing that on the 1st August, 1888, as soon as he had any funds from the estate, he made to defendant a tender. The objection that the papers showing the appointment were not produced was waived. It may be that this evidence was not material, but no possible harm could come from it to the defendant. The complaint alleged that Keeler, on the 18th May, 1888, was certified to be of unsound mind, and taken to an insane asylum. The answer admitted that Keeler was taken to an insane asylum, and that Garrett, after his appointment as committee, and on or about May 7, 1888, made a tender. Before any evidence was given by defendant, the answer was, without objection, put in evidence by plaintiff, for the purpose of using the admissions in it. At the close of the charge the counsel for the defendant asked the court to charge "that it was not necessary that this notice should be received personally by Nelson R. Keeler." To this the court replied: "No; the only effect of that question as to whether it was received personally by him or not, if the notice was actually received by him, and he knew it was there, then I do not think there would be right to recover at all; because, then, knowing that he had the notice, it was his business to look after it. Of course, if there were proof he actually received it in his hands, there might still be a question whether on the evidence he was in a condition of mind to appreciate and understand that he had it." The defendant duly excepted to the refusal to charge as asked, and to the modification of the request as stated by the court. The counsel for defendant argues that his request was denied, and the proper service of the notice made to depend on the condition of Keeler's mind. It is not clear that the request was denied. In view of the prior charge, the court in effect said: "No, it was not necessary that Keeler should receive the notice personally; but if he did, and was able to and did understand it, then the plaintiff could not recover, although she may have had the agreements that she testified to." This was going further in favor of defendant than the court had previously done, and of this the defendant cannot complain. Any indefiniteness, however, about the answer to the request was removed when the court, immediately thereafter, at request of defendant, charged that if Keeler came to the company's office in 1887, and directed that the notices of assessments should be sent to him at No. 306 South Salina street, and the notices of assessments were sent, then the plaintiff could not recover. This placed the matter of service in just the position the defendant desired. The court had, in effect, so charged before, and there was really no dispute about the completeness of the service, provided the defendant had a right to serve in that way, and disregard any rights the guardian of plaintiff may have had in the matter. Our attention is not called to any other exceptions. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.