JENNIE HARRIS, Respondent, v. JOHN T. WILSON, Appellant.

St. Louis Court of Appeals, December 18, 1900.

1. **Insurance:** UNINCORPORATED VOLUNTARY INSURANCE ASSOCIATION: BY-LAWS, OF ASSOCIATION, CONSTRUCTION OF: FORFEITURE OF RIGHTS. Where the by-laws of an unincorporated voluntary insurance association state that "Grand Division dues must be paid semiannually in advance, on or before the first day of January and July of each year" and that "members failing to comply, forfeit all benefits of this Brotherhood" it is held that these by-laws do not, *ex vi termini* and without any notice or action by the association, work a forfeiture of the insurance certificate, because fifty cents of the semiannual dues of the assured was unpaid at the date of his decease.

2. **Practice, Trial:** PLEADINGS: EQUITY: TRUSTEE, TRUST FUND: EVIDENCE. Where the pleadings and evidence show that a defendant is in possession and control as trustee of an unincorporated voluntary insurance association of all its funds in this state; that no other member of the executive board associated with him in the disbursement of these funds resides in this state; and it further appears that he is the chief representative of the company, as well as its general executive officer, the court, for the purposes of the equitable relief sought by the suit in the case at bar, can act, *in rem* as to the trust funds and *in personam* as to their custodian, the defendant.

3. ———: ———: ———: JURISDICTION. In the case at bar the court has full jurisdiction of defendant and may enforce its decree by apt and proper orders as to the funds in his possession and under his control, until the amount adjudged in favor of plaintiff is satisfied and paid in full.

4. ———: ———: BY-LAWS OF ASSOCIATION NO BAR TO BRINGING SUIT. Where the by-laws of a voluntary insurance association do not secure any adequate method of redress by appeal to the associations, and when they have none of the elements of an agreement for arbitration they constitute no bar to action to recover on an insurance policy, by reason of the fact that plaintiff has omitted to pursue such remedies as are allowed under such by-laws of the association.

Appeal from the St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

AFFIRMED (*with instructions to modify decree*).

*John F. Green* and *Frederick N. Judson*, for appellant.

(1) The court was without jurisdiction to try this cause and render the relief prayed for by the plaintiff: (a) It had not jurisdiction to enter an order sequestering the funds of the association which are on deposit in the Merchants-Laclede National Bank, because the members of the grand executive committee, the trustees of the associa-

tion in whom the legal title to all of its property and funds is vested, have not been served with process. Greer, Mills & Co. v. Stoller, 71 Fed. Rep. 1; Hammerstein v. Persons, 38 Mo. App. 336; Perry on Trusts, sec. 885; Bushong v. Taylor, 82 Mo. 670. (b) It had not jurisdiction to make any order affecting the funds of the association deposited in the Merchants-Laclede National Bank, because that bank is not a party to the suit; and also because said bank had not set apart any specific money as the property of the association, but the relation between the bank and the association is that of debtor and creditor, and its indebtedness to the association can be reached only by garnishment. Bank v. Tutt, 5 Mo. App. 342. (2) Defendant association did not waive its right to insist upon said suspension and forfeiture by furnishing printed blanks to enable plaintiff to make proof of death. (a) Because at that time the printed blanks furnished plaintiff, she was notified that William Harris had been suspended by reason of his failure to pay assessment number 5. Bacon on Ben. Soc., sec. 420; Borgraafe v. Knights of Honor, 22 Mo. App. 142. (b) Because the plaintiff did not incur any expense in making said proofs and was not in any way injured or damaged thereby. Borgraafe v. Knights of Honor, 22 Mo. App. 142; Bacon on Ben. Soc., sec. 420. (3) Plaintiff can not maintain this action, because she has not complied with the provisions of the constitution of defendant association which requires that the holder of any benefit certificate, whose claim has been rejected by the grand executive committee, must submit the claim to the delegates assembled in grand division. She must first exhaust her remedies within the association itself. McMahon v. Supreme Council, 54 Mo. App. 469; Mulroy v. Supreme Lodge, 28 Mo. App. 463; Chosen Friends v. Forsinger, 125 Ind. 52; Levy v. Order of Iron Hall, 38

Harris v. Wilson.

Atlantic Rep. 18; Hoog v. Knights, 7 Pa. Sup. Ct. 425; Fillemore v. Maccabees, 66 N. W. R. 675.

*Abbott & Edwards* and *Frederick H. Bacon* for respondent.

(1)   John T. Wilson was the only necessary party in this proceeding because, under the constitution, he was the custodian of its property, collected and received all assessments, which were deposited subject to his own personal check.   Moreover, all the members of the executive committee were non-residents of this state and Wilson was the only officer within the jurisdiction of the court.   (2)   William Harris in his lifetime paid all dues and assessments for which he was liable to the local secretary and treasurer of Shelby Division and within the times required by the laws of the association.   Only the assessment for May, 1897, of one dollar, which was payable on or before the fifth of June, 1897, was claimed to be unpaid, and the testimony shows that not only was it paid in time to the local secretary and treasurer, but that Wilson himself received it in time. The same may be said as to the grand division dues.   The fact that Wilson misapplied the money by wrongly crediting it makes no difference.   Payment of assessments was made in the same manner that they always had been and with the knowledge of the association.   Kenyon v. Knights Templar, 122 N. Y. 247; Van Bokkelen v. Mass. Ass'n, 35 N. Y. Supp. 865.   (3)   The court did not err in receiving the receipt book in evidence, because Mrs. Harris had sent the book by registered mail to Harry Tyldesley and received it back by mail with his signature.   Therefore, the presumption is that the signature is genuine.   Greenleaf on Ev. (Last Edition), sec. 573a.   (4)   Mrs. Harris was not bound

before suit to submit her claim to the general delegation. State ex rel. v. Grand Lodge, 70 Mo. App. 463; McMahon v. Maccabees, 151 Mo. 522. (5) By putting plaintiff to the expense of making up proofs of loss, or at least the trouble of making them, the association waived its defense.

BOND, J.—This is a suit on the equity side of the court, brought by the beneficiary in an insurance certificate for $1,000, issued on the first day of January, 1897, by the Brotherhood of Railway Trackmen of America, an unincorporated voluntary association. The petition alleges the death of the assured, the right of plaintiff, who was his wife, to receive the amount specified in the policy, the refusal to pay the same; that defendant, John T. Wilson, and his five co-defendants are the trustees and managers of said voluntary association, and that he had in his hands and under his control the funds of the association available for the payment of the sum due plaintiff. It seeks the application of the funds in the hands of said Wilson to this purpose, and in case of their insufficiency, it prays a decree requiring him and his co-defendants to levy an assessment, sufficient to pay plaintiff's claim, upon the members of said association.

The separate answer of defendant, John T. Wilson, sets forth that said association consists of a grand division and variously named subordinate divisions; admits that he is the chief officer of said grand division, and that his five co-defendants constitute the grand executive committee, which, during the intervals between the biennial sessions of said grand division, has management and control of the business and affairs of said association; admits that he is also the grand secretary and treasurer of said association, and as such has in his custody its cash funds; denies that he has any power to disburse these or to pay death claims against said

association, without the authority and direction of its grand executive committee; denies that he has any power to levy assessments to pay death claims against the association, without the authority so to do from said grand executive committee. He admits the issuance of the certificate of insurance sued upon and claims that it was forfeited at the time of the death of the assured by reason of his delinquency in the payment of dues and assessments, which were required to be paid by the constitution and laws of said association and the contract between it and the assured, to save the rights of the beneficiary from forfeiture. The answer further sets up as a defense the failure of plaintiff to pursue her remedies under the constitution and laws of the association upon the rejection of her claim by its grand executive committee.

The reply of plaintiff averred that defendant Wilson, with full knowledge of the alleged delinquency on the part of the assured, furnished plaintiff with proofs of death to be filled out and delivered to him, and received and considered the same when furnished by plaintiff at some expense, which facts she pleaded as a waiver on the part of said Wilson of any right to refuse payment of said certificate.

The cause was submitted to the court and a decree and finding entered in favor of plaintiff, accompanied by separate written findings of facts and conclusions of law made at the request of defendant, who claims, on his appeal therefrom, that the court erred both in its ascertainment of the facts and in its application of the law.

I. The issues on the merits, tendered by the pleadings, go, first, to the fact and effect of the omission to pay dues and assessments; secondly, to the waiver of the consequences of non-payment of dues and assessments. The questions arising upon these issues are, did the assured pay the dues

and assessments required by the contract with the association when it issued the policy on his life? Was the policy *ipso facto* forfeited; or only forfeitable by such non-payment? Does the evidence show a waiver of the consequences of non-payment of dues and assessments? When the husband of the plaintiff applied for the insurance certificate in her favor, he agreed to pay all assessments and dues within thirty days after date of notice or to forfeit his membership and all claims against this department of the brotherhood. Thereupon on the first day of January, 1897, the certificate in question was issued for $1,000, payable to plaintiff upon the death of the assured, and he became obligated to pay an assessment of $1.00 per month, and such other additional assessments as the grand executive committee of the association should levy for the payment of claims. He also became obligated to pay grand division dues in semiannual payments of $1.50, on or before the first day of January and July, of each year. It was the duty of the assured under the laws of the association to pay his monthly assessment of one dollar and other special assessments on or before the fifth day of the succeeding month in pursuance of monthly notice thereof in a publication termed the "Trackmen's Advance Advocate." The laws of the association further required that all assessments must be paid to the grand chief, "or the benefit certificate becomes null and void," and that unless the grand division dues were paid on or before the first of January and July of each year, the non-paying member would "forfeit all benefits of this brotherhood." The defendant Wilson as the grand chief foreman and grand secretary and treasurer of the grand division of said association established an office in the city of St. Louis, Mo., where remittances were made to him through the medium of the secretary and treasurer of

the subordinate divisions of the association located elsewhere. The particular division which issued the policy in suit (Division No. 11), was located at Shelby, Kentucky, which division had as secretary and treasurer, during the year 1897, one Harry Tyldesly, whose duty it was, under the laws of the association, to collect the dues and assessments of the members of that division and transmit them to the defendant Wilson as the representative of the grand division at St. Louis, taking and preserving his receipt for such moneys. In the performance of these services the laws of the association further provided, that the division secretary and treasurer should be regarded as the agent of the members of the respective local divisions, and that it should be the duty of the members to see that the money paid by them to the division secretary and treasurer reached the grand division. The assured member, William Harris, died on July 3, 1897. As he had until the fifth day of that month to pay the monthly assessment of one dollar levied in June, 1897, he was clearly not in default as to that assessment on the date of his death. It is, however, contended that he was in default as to the May assessment of one dollar, the final day for payment of which was June 5, 1897. Defendant denies that this assessment was ever paid to him as grand division secretary and treasurer, and in reference to it on July 6, 1897, addressed a letter to the secretary of the division of which William Harris was a member, stating: "Brother W. Harris has been delinquent over thirty days; as he failed to pay assessment No. 5, which was due June 5, his insurance certificate has been suspended. I herewith return the one dollar sent in by you for him." The record however further shows that on June 5, 1897, defendant received a letter, which was dated June 4, 1897, to-wit:

"Mr. J. T. Wilson, G. C.,
    St. Louis, Mo.

"Dear Brother:

"I have just received Harris' dues which I enclose $2 and he wants to know if he is entitled to anything-he-as been sick for a long time and *as* not been able to do anything and don't think he will be able to follow *is* employment anymore. Trusting you will write and let me know I remain yours in B. L. U.

                                    "Harry Tyldesly."

The defendant states that he had placed the $2.00 remitted by this letter to the credit of William Harris (the assured) for grand division dues ($1.50), payable July 1, 1897, for the six months thereafter, and that he credited the surplus fifty cents for the grand division dues payable January 1, 1898, for the six months thereafter, claiming that he made this application of payments in accordance with the directions contained in the letter enclosing the money.

As it is not contended that the assured was in default for any monthly assessment prior to that levied in May, 1897, it must follow, if the money to pay the same was transmitted to the defendant for that purpose before the expiration of the last day of payment, to-wit, June 5, 1897, then there was no delinquency in the payment of dues for monthly assessments, which would have subjected the insurance certificate to the forfeiting provisions of the laws of the order. The above letter from the local treasurer discloses by its spelling and terms that it was written by an illiterate person, little accustomed to the exact use of language, and ignorant of nice distinctions between the meaning of words seemingly synonymous. It must therefore be interpreted with reference to the mental habits of the writer, disclosed by his language, and with reference to the objects

had in view by him when it was written. With these aids and in the light of the facts as they then existed, the true meaning and intent of the letter is not difficult of ascertainment. It was received by the defendant on the fifth day of June, which was the last day for payment of the one dollar assessed against him for the previous month of May. At the same time the assured was indebted to the association for another one dollar assessed against him on the first day of June, for which the final day of payment would be on the fifth day of the following July. It is clear, therefore that on the fifth day of June the assured was indebted to the association in the sum of two dollars only, and that he was not then indebted to it in any sum for semiannual dues. Since those for January, 1897 ($1.50), had been paid in advance for the succeeding six months, he could not for such dues become again *indebted* to the association before the first day of July, 1897. It is equally plain that this status was not altered by the fact that he had the privilege, before the first of July, of paying in anticipation the debt which could not accrue until that date. For, however he might choose to act in that regard, certainly nothing was *due* from him to the association, on account of *semiannual dues*, until the expiration of the six months, for which he had paid in advance on January 1, 1897, to-wit, July 1, 1897. Until the latter date was reached there was clearly nothing *due* or owing to the association from the member on account of semiannual dues. As to the May and June Assessments of one dollar each, the facts were totally different. Both of these were *due*, as well as payable, on the fifth of June, 1897. The former could not be paid later than this date; the latter had then been already levied and was due and would continue payable until the fifth of July. Under such state of facts no other motive could actuate a reason-

able man than to provide for the payment of the indebted-
ness then *due*, upon the prompt payment of which depended
the future continuance of the insurance certificate issued by
the association. We find, in accordance with this purpose,
that the assured paid to his local treasurer for transmission
to the central treasury of the association the exact amount
of what was *then* due from him to the association, to-wit.
one dollar each for the monthly assessments of May and
June. That he had no idea by the payment of the precise
amount of these two assessments to pay a different obliga-
tion (semiannual dues) for a *less* sum, which was not then
due, nor could arise until about a month thereafter, is
evident, if he was, as we must assume, a man of ordinary
intelligence and prudence, and therefore as a member of
the association cognizant of the fact that the payment of his
May assessment on the fifth day of June was necessary to
preserve the insurance on his life. In view of the situa-
tion of the assured, the forwarding on his behalf of the
exact sum of money necessary to discharge his existing in-
debtedness to the association, there was no justification for
the act of the defendant as grand secretary and treasurer
and chief officer of the association in applying such money,
not to the indebtedness then existing against the sender, but
to one which might arise in the future and which the sender
had a mere option of paying before it accrued unless he was
*specially* authorized so to do by the assured or his agent.
That no such authority was given by the terms of the letter
enclosing the money to the defendant, even if it were con-
ceded that the writer thereof was the agent of the assured
(which, except for the argument, we do not concede, 177 U.
S. 250), is apparent from the language and terms of the
letter itself, when read and construed in the light of the
facts and conditions existing when it was written. The asso-

ciation, of which the assured was a member, provides for
the payment of two kinds of dues; first, semiannual dues,
which are the basis of general membership; secondly, assess-
ment dues levied monthly, which are the basis of the insur-
ance awarded to certain of its members.    The letter under
review does not specify which of these two kinds of dues was
in the mind of the writer, but its context shows first, by the
enclosure of a specific sum, that it referred to those dues
which that sum would pay; or, in other words, the dues for
the two assessments of May and June; secondly by the use
of the words *"Harris' dues"* that it was the intent of the
writer that the money enclosed should be applied to some-
thing which was *then* due from the assured, not in prepay-
ment of something which was unquestionably not due at the
time and would only become so if the member should con-
tinue to live and maintain his connection with the order for a
future period of about one month.    It seems to us that the
conclusion can not be avoided, that the defendant had nc
authority whatever on the fifth day of June, 1897, to apply
the money, received by him on that date on behalf of Wil-
liam Harris, to any other purpose than to the satisfaction
of the indebtedness then existing against said Harris, which
the evidence in this record shows was confined to a liability
for the dues upon the assessments levied in May and June,
1897.    We therefore hold that the defendant Wilson had no
right or authority to declare, as he did in his letter of July,
6, 1897, that the insurance certificate of William Harris
was suspended for non-payment of the monthly assessment
of one dollar made in May, 1897.    As this disposes ad-
versely of the contention of appellant that such assessment
was not paid, it is wholly unnecessary to discuss the effect
of the laws of the order upon the benefit certificate in suit
if such assessment had not been paid.    The record shows

that no dues for monthly assessments were unpaid at the death of the assured.   Whether or not, therefore, the special provision of the laws applicable to such a contingency became operative without further action on the part of the association declaratory of a forfeiture, need not be decided at present.

II.   It is, however, urged by counsel for appellant that although it might be held that the defendant was paid the monthly assessment for May by the remittance of the $2 received by him on the fifth day of June, 1897, still not enough of this remittance was left to pay the semiannual dues, $1.50, which accrued on July 1, following, and that the fifty cents thus shown to be unpaid on the semiannual dues worked a forfeiture of the insurance certificate under the laws of the association regulating the payment of such dues.   In discussing this point we leave out of view the probative effect of the evidence of the receipt book given the assured and the testimony of the plaintiff tending to show the payment by him of all his dues, assessment or semiannual, and confine our inquiry to the scope and meaning of the language of the laws of the association invoked by appellant in support of his theory of a forfeiture of the insurance certificate.   The language of the constitution of the association with reference to delinquency in the payment of semiannual dues, is widely different from that relating to payment of monthly assessments.   In the latter case failure to pay affects the validity of the insurance certificate, and may, under certain circumstances, cause it to become "null and void."   But no such specific effect is provided in cases of non-payment of semiannual dues.   These merely attach the members  to the general association, to which they may belong without applying for or taking out any policies of insurance.   On the other hand, the monthly

assessments are in lieu of premiums for insurance, hence it is provided that non-payment of these go to the validity of the policy based upon them. No such reason, however, existed for the guarantee of the payment of semiannual assessments, hence as to them it is only provided, to-wit: "Grand division dues must be paid semiannually in advance, on or before the first day of January and July of each year. Members failing to comply with the conditions of this section shall forfeit all benefits of this brotherhood." Forfeitures are hateful to justice, hence the law requires that they should not be upheld except from necessity. Where the agreement providing for them is not in express terms self-enforcing, that effect should not be given to it, if it is susceptible of any other rational construction. The above provision states in general terms that members failing to pay semi-annual dues "shall forfeit all benefits of this brotherhood." The question naturally arises, how shall this forfeiture take place? Is it to be the instant and immediate result of mere non-payment, or shall it take effect only after declaratory words or action on the part of the association? The section does not say in terms that a forfeiture *ipso facto* shall result from failure to comply with its requirements. It is wholly silent as to the method of enforcing the general forfeiture of "all benefits" referred to therein. We are not, therefore, compelled by the language used to adopt the view that mere non-payment of a part of the semiannual dues instantly lopped off all the rights of William Harris, either as a member of the general association, or of its insurance department. If such was the design of the provision, it is certainly unexpressed, and we are not disposed to resort to inference to support it. Moreover, the conduct of the association shows they did not attach such meaning to the even more specific provision of its laws relating to forfeiture for non-payment of monthly assessments, for the defendant herein in his

letter of July 6, 1897, only claimed that the benefit certificate was "suspended" by the alleged non-payment of a monthly assessment.   It is difficult to perceive how the association can, with any degree of consistency, insist that the provision under review providing for a mere general forfeiture has a self-acting force not claimed for the one providing for a specific forfeiture of an insurance certificate upon failure to pay premiums.   At any rate we do not think such a position can be maintained with reference to the section under review, and our conclusion is that it did not, *ex vi termini* and without any notice or action by the association, work a forfeiture of the insurance certificate, because fifty cents of the semiannual dues of the assured was unpaid at the date of his decease.   These views render it unnecessary to discuss the evidence as to waiver.

III.   The other points relied upon by appellant relate to the sufficiency of the parties defendant and the alleged omission by respondent to follow up her remedies in the association before instituting this action.   As to the first point, the pleadings and evidence show that defendant Wilson is in the possession and control as trustee of the association of all of its funds in this state; that no other member of the executive board associated with him in the disbursements of these funds resides in this state.   It further appears that he is the chief representative of the company, as well as its general executive officer.   To reach the fund in his hands or under his control, it was not necessary to join other officers merely empowered to pass on his accounts and approve payments, and who were nonresidents of this state.   The court, for the purposes of the equitable redress sought by this action, can act *in rem* as to the trust funds and in *personam* as to their custodian, defendant Wilson. We do not think, therefore, that the non-joinder of other members of the executive board of the association presented

an insuperable difficulty to a decree ascertaining the sum due plaintiff and subjecting to its satisfaction the money in the hands of defendant Wilson in this state. The court has full jurisdiction of him and may enforce its decree by apt and proper orders as to the payment and disbursement of the funds in his possession or under his control, or which may hereafter come into his possession or under his control, until the amount adjudged in favor of plaintiff is satisfied and paid in full. As to the second point, there is no merit whatever in the contention that plaintiff was barred from bringing this suit by reason of her omission to pursue such remedies as are allowed under the laws of the association. The provisions on that subject do not secure any adequate method of redress by appeal to the association. "They have none of the elements of an agreement for arbitration. They purport merely to make the defendant the judge in its own case to determine the whole controversy between it and the plaintiff" (McMahon v. Maccabees, 151 Mo. 522-544). Besides, the record shows that the defendant in this case promised to take the claim of plaintiff before the biennial council, and that he wholly failed so to do, but simply informed that body that the claim had been rejected. Under these circumstances we do not think there was any duty cast on the plaintiff to pursue her remedies in the organization which she would have been compelled to do if the laws of the defendant order had provided reasonable and fair methods of procedure for that purpose. State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 465. In the case at bar her right to redress was prejudiced by the defendant's conduct as the representative of the association. The decree in this case is affirmed, and the cause remanded for modification of the decree so as to conform to the views herein expressed. The cost of this appeal will be taxed against appellant. All concur.