BANGE, Appellant, v. THE SUPREME COUNCIL LEGION OF HONOR OF MISSOURI, Respondent.

St. Louis Court of Appeals, November 18, 1907.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Suspension for Non-Payment of Assessments: Self-executing By-law. The by-laws of a fraternal beneficiary association provided that if a member should fail to pay his assessment for the relief fund within thirty days from the date of the notice of the call therefor, he should stand suspended and that his lodge might by a majority vote pay his assessment as a loan or a gift, but that such payment should be made within the time specified. The by-laws further provided a method by which a suspended member could be reinstated within a given time after notice of his suspension. A member of such order failed to pay his assessments for several months, but they were paid for a part of the time by his lodge which then ceased to make such payments; such member became suspended by operation of the by-laws on failing to pay his contribution within thirty days after notice of a call when his lodge refused to pay it for him.

2. ———: ———: Forfeitures: Notice. Forfeitures are so unfavorably regarded in jurisprudence that courts of law will not permit a forfeiture to take effect under the provisions of a contract unless the party asserting the foreefeiture has complied on his part with all conditions upon which the contract makes the forfeiture depend. This principle applies to notice to a delinquent member of a fraternal beneficiary association where the by-laws of the association require notice to a member before he should be suspended.

3. ———: ———: ———: ———: "Regular Address." The by-laws of a fraternal beneficiary association required notice to be mailed to the "regular address" of a delinquent member in order to accomplish his suspension.    A notice was mailed by the recorder of the lodge and addressed to a delinquent member's St. Louis address after he had removed to Chicago, when the recorder of the lodge, whose duty it was to send the notice, knew of his change of residence, although the member's wife and child still remained a part of the time with her mother at the former St. Louis residence.    The notice was not mailed to the "regular address" within the meaning of the by-laws.

4. ———: ———: ———: ———: Actual Notice: Jury Question. And in such case where there was evidence tending to show that the notice might have reached the member, and evidence to the contrary, it was a question for the jury as to whether he had actual notice.

5. ———: ———: ———: Acquiescing in Suspension: Jury Question. And where the evidence was conflicting as to whether such member, who had failed to pay his assessments for several months, had received notice of a call, it was a question for the jury whether he had acquiesced in his suspension.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*James J. O'Donohoe* for appellant.

(1)    The issue of the certificate and Bange's death were proven upon the trial and the same made a prima-facie right of recovery in appellant.    Mulroy v. Knights, 28 Mo. App. 468; Stewart v. Legion of Honor, 36 Mo. App. 319; Forse v. Knights of Honor, 41 Mo. App. 106; Mulroy v. Knights, 28 Mo. App. 468; Chadwick v. Triple Alliance, 56 Mo. App. 474.    And "where the plaintiff has made out a prima-facie case, although the defendant may introduce evidence which entirely overthrows and disproves the prima-facie case of the plaintiff, the trial court cannot say, as a matter of law, that it is so overthrown, and direct a verdict for the defendant.    The credibility of the witnesses and the weight of the evidence are peculiarly matters for the jury.    The plaintiff is

entitled to have the judgment of the jury on the credibility of the witnesses produced by the defendant and the value of their testimony." Boone v. Railroad, 20 Mo. App. 235; Gibson v. Zimmerman, 27 Mo. App. 90 (cases cited). (2) Section 3 of Law 6 of respondent's laws is not self-executing. Seehorn v. Catholic K. of A., 95 Mo. App. 233; Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Benefit Ass'n, 77 Mo. App. 586; McMahon v. Maccabees, 151 Mo. 522. It is an unreasonable by-law and void. State ex rel. v. Merchants' Exchange, 2 Mo. App. 96; Purdy v. Bankers' Life Ass'n, 101 Mo. App. 91. Respondent by its course of dealing with Bange waived the prompt payment of contributions. Dolan v. Royal Neighbors of A., 100 S. W. 498; Andre v. Modern Woodmen, 102 Mo. App. 377; Cauveren v. Ancient Order of Pyramids, 98 Mo. App. 433; Courtney v. St. Louis Police Relief Ass'n., 101 Mo. App. 261; Frame v. Woodmen of the World, 67 Mo. App. 127; Knights of Pythias v. Withers, 177 U. S. 260. (3) Whether Lindsley mailed a notice of the contribution for the month of October, 1904, to Bange at his "regular address" must be determined by the jury. Hannum v. Waddill, 135 Mo. 153; Agnew v. A. O. U. W., 17 Mo. App. 254; Siebert v. Chosen Friends, 23 Mo. App. 268; Mulroy v. Knights of Honor, 28 Mo. App. 463; Stewart v. Legion of Honor, 36 Mo. App. 319; Force v. Knights of Honor, 41 Mo. App. 106. "The burden of proving notice rests upon the party asserting its existence." 21 Am. & Eng. Ency. of Law (2 Ed.), p. 589; Bartlett v. Varner, 56 Ala. 580 (cases cited).

*Kincaly & Kinealy* for respondent.

(1) The unquestioned evidence is that the notices were all mailed to the Park avenue address and the court properly treated that fact as established and undisputed. Pier v. Heinrichhoffen, 67 Mo. 163; Grain Co. v. Railroad, 120 Mo. App. 203; Ward v. Transfer

Co., 119 Mo. App. 83; Asphalt Co. v. Transit Co., 102 Mo. App. 469; Hendley v. Refining Co., 106 Mo. App. 21; May v. Crawford, 150 Mo. 504. (2) The notices were properly sent to the Park avenue address since that was the "regular" address of the member. 24 Am. & Eng. Ency. of Law, p. 241, tit. Regular. (3) The law of respondent provided, on non-payment of assessments within the prescribed time, for a suspension of the member without any action on the part of the council. Lavin v. Grand Lodge, 104 Mo. App. 1; Boyce v. Royal Circle, 99 Mo. App. 349; Scheele v. State Home Lodge, 63 Mo. App. 277; Borgraefe v. Knights of Honor, 22 Mo. App. 127. (4) The letter from Mr. Lindsley, offered in evidence by appellant, was properly excluded by the court. Harvey v. Grand Lodge, 50 Mo. App. 472. (5) Julius A. Bange acquiesced in his suspension and for that reason appellant could not recover. Lavin v. Grand Lodge, 112 Mo. App. 1.

GOODE, J.—This is an action on a benefit certificate in a fraternal association and the defense is the insured had forfeited his membership by non-payment of dues prior to his death. The insured was Julius A. Bange. He was a member of Irving Council No. 2 of the defendant order, the Supreme Council Legion of Honor of Missouri. Minnie Bange was the wife of the insured and the beneficiary of the certificate, in which the order obligated itself to pay her $2,-000 on due notice and proof of the death of her husband. Bange joined the order and took out the certificate April 5, 1902. At that time he was a resident of the city of St. Louis and lived at No. 3546 Henrietta street. He died February 19, 1905, in Texas, while traveling there as a salesman for a Chicago business concern. Subsequently Bange moved from No. 3546 Henrietta street, St. Louis, to 2637 Park avenue. This removal was in October, 1903, and plaintiff with his family, consisting

of himself, wife and child, went to live with his mother-in-law, Mrs. Hobie. Thereafter the recorder of Irving Council would sometimes call at 2637 Park avenue to collect the dues and sometimes send a written notice of a call for payment to that address. A by-law of the order provided that a notice to pay dues should be "directed to the regular address of the member and deposited in the post office," provided further that this should be a sufficient notice to bind a member. Contributions to the relief fund were called monthly and during the year 1904, Bange's dues were $1.39 a month. In May of that year and while still residing at 2637 Park avenue, he paid the order $6, which sum discharged his dues to June 30, 1904, and left thirty-three cents standing to his credit. The call due June first and payable as late as June 30th, was No. 128, and was the last call paid by Bange. During the summer and sometime, it seems, after June, Bange, being out of employment, went to Chicago to seek work. When he left St. Louis he stored his furniture in the cellar of his mother-in-law's home on Park avenue and his wife and child remained there. His wife visited him for six weeks during the summer in Chicago. Bange worked for a time in Chicago and in January, 1905, got a position as traveling salesman, his territory being in Texas. In the meantime he had lived with his sister at No. 2094 Wilcox avenue, Chicago; that is to say, he stayed at said number from some time in July, 1904, until January, 1905, and then went to Texas. There is evidence tending to show his mail address continued to be in Chicago, or that such of his mail as came to 2637 Park avenue, St. Louis, was forwarded to his Chicago address. Mrs. Hobie swore that during the summer of 1904, after Bange had left St. Louis and while his wife was visiting him in Chicago, Malcolm A. Lindsley, the Recorder of Irving Council, called once or twice at 2637 Park avenue

128 App.—30

to collect Bange's dues and Mrs. Hobie told Lindsley, Bange's Chicago address. She testified further Lindsley said the Lodge would keep up the assessments for a year. It is not shown positively that Mrs. Hobie communicated this statement to Bange, but it is fairly inferable that she did. This occurred in August, 1904. In point of fact the Irving Council did pay Bange's dues for three months; that is, for July, August and September, and had previously paid his calls for April, May and June, though for the latter three months he had reimbursed the Council. Such payment of dues for delinquents was in accordance not only with the custom, but with a by-law of the order. Said by-law is as follows:

"Each member shall pay the amount due as his contribution to the relief fund within thirty days from the date of such call, and any member failing to pay such contribution on or before the first meeting of his council after the expiration of said thirty days, shall stand suspended from the order and from all benefits therefrom; provided, however, that any council may, by a majority vote of the members present at said meeting, authorize the payment of a member's contribution as a loan, or as a gift, from its general or any fund, other than the relief fund, but such payment must be made within the time herein specified."

There is another by-law which provided methods for the reinstatement of suspended members. Within thirty days from the date of suspension a member may file with the recorder of the council, a written application for reinstatement and pay to said recorder all dues and fines in arrears from the date of suspension and thereupon be reinstated. If the suspended member waits ninety days after his suspension before seeking reinstatement, he must file a written application, accompanied by the certificate of some physician and pay up his contributions. In such instance he can only be re-

instated by making an application in that form and obtaining a favorable vote of his council. If a suspended member waits longer than ninety days before applying for reinstatement, it seems he must be elected as a new member. The testimony of Lindsley was the council usually carried a delinquent for three months or sometimes longer when solicited. On October 1, 1904, call No. 132 for contributions from members was issued and a notice of the call sent by the recorder Lindsley to Bange to No. 2637 Park avenue, so Lindsley swore, and further, that he sent a notice of said call again on November first. Lindsley is a man upwards of seventy years old. His testimony on this point is that he would write out a large number of notices of assessment, thirty or more, place them in stamped and addressed envelopes, take the batch to a mail box and deposit them. His testimony is quite positive that he mailed Bange on October and November first, notices of the call for assessment No. 132. This assessment would be $5.67 for three months' dues. Mrs. Hobie's testimony tends to prove no notice was sent; for she swore that, to her knowledge, no letters came for Bange to her home with the card of the Irving Council stamped on the corner of the envelope. Lindsley testified the notices were sent out in envelopes with said card on them. Mrs. Hobie swore any mail that came to her home for Bange was forwarded to Chicago; that she told Lindsley Bange's regular address was 2094 Wilcox avenue, Chicago, and Lindsley promised to write to him at that address. The by-law of the order regarding the duties of the recorder, provided that said officer of each subordinate council should "conduct all its correspondence." On November 9, 1904, Bange was suspended and his suspension was entered on the minutes of Irving Council at one of its monthly meetings, for non-payment of dues. Lindsley swore he sent a notice of his suspension to him and the Supreme Recorder of the Legion of Honor,

whose office is at 410 Fullerton Building, St. Louis, testified that after he was notified of the suspension by Irving Council, he, too, sent a notice of it to Bange. Both notices were addressed to 2637 Park avenue, St. Louis, Missouri. Some correspondence took place between Bange and Lindsley after the former went to Chicago. Bange must have written to Lindsley in the fore part of August, because, on the 18th of that month, Lindsley wrote to him as follows:

"IRVING COUNCIL No. 2, L. OF H.
Meets Second and Fourth Wednesdays
Masonic Temple, Grand and Finley Avenues. M. A. Lindsley, Recorder, 3696
Finney Ave.
          St. Louis, 18th August, 1904.

"Bro. J. R. Bange,
          "Chicago, Ill.

"Dear Sir: I am in receipt of your esteemed favor of recent date. Irving Council will not suspend you; it will pay your assessments for a reasonable length of time hoping that you may find employment and be able to reimburse them. Present my regards to your wife, who, I learn, is with you. After the receipt of your letter I called to see her to assure her Irving Council would treat you kindly and from her mother learned that she was with you.

          "Fraternally,
          "M. A. LINDSLEY,
                              "R."

That letter was offered in evidence by the plaintiff, but excluded by the court. It was in an envelope addressed as follows:

"J. A. Bange, Esq., Chicago, Illinois, 2094 Wilcox Avenue. Return to 3696 Finney avenue. Post mark St. Louis, August 18th, 1904, 2 p. m. Chicago postmark, August 19th, 1904, 9 a. m."

The court admitted the envelope in evidence. Bange never afterwards paid dues, tried to be reinstated, or participated in any way in the proceedings of Irving Council. At the conclusion of the evidence the court gave a peremptory instruction to the jury to return a verdict for the defendant; whereupon plaintiff took a nonsuit with leave to set the same aside. A motion to that effect having been filed and overruled, the present appeal was taken.

1. This action is at law for the amount of the benefit certificate, and was brought on the theory that the deceased was a member of the order in good standing at the time of his death, the condition on which the defendant became liable to the beneficiary. The defense is that the deceased was not a member in good standing when he died, for the reason that he had been suspended from the order and all the benefits of his membership lost, in consequence of his failure to pay the assessments for July, August and September, as called for by Call No. 132. Calls Nos. 129, 130 and 131 had been issued on the first days of July, August and September, respectively, and failure to respond to those calls also is pleaded in the answer as ground of forfeiture. But at the trial the proof showed the council paid said calls for the insured, so that he only became subject to suspension when it refused to pay in his behalf call No. 132. We must inquire to what extent the by-law providing for the suspension of a member for failure to pay contributions, is self-executing and on what conditions suspension will result from such failure. The by-law declared contributions must be paid within thirty days after notice of a call was sent, or the member delinquent would stand suspended. If nothing more had been said, default for that period by the member would *ipso facto* work a suspension. But the by-law contained a proviso that the council to which the member belonged might authorize his contribution to be paid as a loan or gift

from its general fund; adding that the payment must be made within the time specified. This proviso permitted a council to come to the aid of a delinquent and pay his assessment for him if it chose to do so. Whether it would aid him or not, rested with the members of the council and was to be determined by a majority vote. Neither the body of the by-law nor the proviso, was adhered to literally in all instances by Irving Council. The practice was to carry delinquents for three months and sometimes longer. We do not mean to say this usage had taken the form of a binding custom which obligated the council to pay a member's dues for three months. The majority of the members, if they believed the default was due to the member's fault instead of his misfortune, or for any other reason which appeared to them to be sufficient, might refuse to pay his assessment, and thereupon the by-law would take effect and he would stand suspended. In point of fact payment by the council in behalf of a delinquent was not made usually within thirty days after the call, but at the first meeting after said thirty days had elapsed. For instance, Bange, was not regarded as suspended at the end of thirty days after call 132 was issued October first, but only when the council, on November 9th, refused to pay his contribution. It was on such refusal by a council that the undisputed testimony shows a delinquent was dropped and no more treated as a member of the order, until he was reinstated on his application filed in thirty or in ninety days after the date of the suspension. Our interpretation of the by-law in question then is, that a delinquent member would become suspended if he failed to pay a contribution within thirty days after notice of a call, and subsequently the council refused to pay for him. The deceased, like every other member of the order, is presumed to have known its by-laws and that his membership would be lost and his insurance forfeited in the contingencies mentioned. Moreover, the

letter addressed to him in Chicago by Lindsley indicates he knew of the by-law and the usages of the order in this regard, and so knowing, was inquiring about the status of his own membership. This letter was not insisted on by plaintiff's counsel as precluding a suspension of Bange for defaulting in his dues, nor do we think it could have that effect. It was not within the scope of Lindsley's duties as recorder to bind the council to pay a member's dues. That was a matter which the by-laws reposed in the discretion of the majority of the council. We do not say the representations made by Lindsley in this letter and to Mrs. Hobie, might not afford grounds in equity for a reinstatement of Bange as a member or the re-establishment of his benefit certificate after forfeiture. Equitable relief is sometimes given against forfeiture of insurance policies on facts not available in a legal action, and, perhaps, occasionally in the exercise of a concurrent jurisdiction. [Harris v. Wilson, 86 Mo. App. 406.] This, however, is not an action in equity to reinstate the certificate.

Having ascertained to what extent the suspension by-law was self-executing, the next question is as to the conditions on which it effected the suspension of a member and the forfeiture of his insurance. Because the tendency of forfeitures is to defeat substantial rights on technical grounds, they are so unfavorably regarded in jurisprudence that courts of equity will not enforce them and will often relieve against them; and courts of law will not permit them to take effect under the provisions of a contract, unless the party asserting the forfeiture has complied, on his part, with all the conditions on which the contract makes the forfeiture depend. [McCollum v. Insurance Co., 61 Mo. App. 352.] Both the by-laws and the custom of the defendant contemplated that notice of a call for contribution should be mailed to a member, and his suspension should occur if he failed to pay within thirty days after said no-

tice was received, and the council refused to pay for him. Therefore one condition essential to the suspension of a member was that he had been duly notified the council had called for the contribution which he failed to pay. It was provided by the by-law that notice of a call should be directed "to the regular address of the member and deposited in the post office," and that when thus given, the notice should be "sufficient to bind the member." It is apparent the by-laws did not operate to suspend Bange when the council refused on November 9th to pay his dues, unless he had been notified in the manner provided, a call had been made. That is to say, to put him in default, a notice of the call for contribution No. 132 must have been sent to his regular address; and this is conceded. The lower court must have deemed the evidence permitted of no other inference and that the by-law regarding notice had been observed. In this view we cannot concur. If the question was material, we think the jury might well have found that in point of fact notice was not sent to Bange's St. Louis address at No. 2637 Park avenue, even if that continued to be his "regular address." Lindsley's testimony on this issue amounted to no more than that he was convinced he had sent a notice to said address because it was his custom each month to mail notices to each member of the call for the ensuing month. But Mrs. Hobie's testimony tends to prove no letters bearing the card of Irving Council were received at her Park avenue home for Bange while he was in Chicago. Lindsley swore all the notices were sent in envelopes bearing that card. But the question arises whether it was sufficient under the circumstances to send a notice to that address. Bange had not been there for several months prior to the issuance of call No. 132, but had been living at No. 2094 Wilcox avenue in Chicago, and was known by Lindsley, whose duty it was to send out the notices, to live there, because Lindsley had written to

him there. The mere fact that Bange's wife and child made their home with Mrs. Hobie in St. Louis, did not constitute said home his regular address within the meaning of the by-law, the intention of which was to require the notice to be sent to the address where the member would be likely to get it. It should be borne in mind that no by-law required a member to inform the council of his regular address or of any change of address. But as Lindsley knew where Bange was and that he was there looking for employment and expecting to remain and that his wife was with him part of the time, his Chicago residence became his regular address, and it was Lindsley's duty to send notice of the call there. Such known changes of the circumstances affecting the address of a member and the likelihood of his receiving a notice, must be regarded by the officials of a society or insurance company in sending notices of calls, or other matters, to insured persons. [Mayer v. Insurance Co., 33 Iowa 304; Goodwin v. Assur. Soc., 32 L. R. A. 473; Keeler v. Ben. Assn., 20 N. Y. Supp. 935; Insurance Co. v. Eggleston, 96 U. S. 572, 578; Insurance Co. v. Smith, 44 Ohio St. 156; 2 Bacon, Ben. Soc. (3 Ed.), sec. 360, p. 901.] We hold, therefore, on the case as the present record presents it, that unless Bange actually received the notice of call No. 132, he was not in default for non-payment of said call, so that on the failure of the council to pay in his behalf, he stood suspended. In other words, that sending the notice to his former address on Park avenue in St. Louis, when the recorder of the council knew that was no longer his address and knew, too, what his Chicago address was, did not constitute compliance with the by-laws.

In view of Lindsley's testimony about sending the notice of the call to Park avenue, and the testimony of Mrs. Hobie that whatever mail came there for Bange after he had gone, was forwarded to him in Chicago, the inference might be drawn by the triers of the fact

that Bange actually received the notice.   If he did, and
in time to pay the call during the thirty days, the cir-
cumstance that the   notice   was   wrongly addressed
would be immaterial.   In such event the purpose of the
by-law requiring a member to be notified of a call was
accomplished, and Bange stood suspended when the
council refused to pay his dues.   These matters present-
ed issues of fact and the lower court erred in taking
them from the jury.   It was also error to exclude the
letter written by Lindsley to Bange in Chicago, for the
reason that it throws more light on Lindsley's knowl-
edge of where a notice should have been sent to reach
Bange than does the envelope in which it was sent.   It
shows Lindsley not only   knew   Bange was in Chicago,
but that his wife was there with him; and emphasizes
the duty of sending notice of the calls for contributions
to Chicago instead of to the former Park avenue address
in St. Louis.

2.   It is contended the evidence shows beyond dis-
pute Bange   acquiesced   in   his   suspension and no
longer regarded himself as a member of the order, and
that thereby his insurance was forfeited, even if the ac-
tion of the council in treating him as suspended, was in-
valid.   The argument is that Bange was notified both
by Lindsley, the recorder of Irving Council, and by
James Smith, the supreme recorder of the order, that he
had been suspended on November 9th for non-payment
of his assessments, and it was incumbent on him, if
he wished to enjoy further the privileges of the society,
to do or say something expressive of dissatisfaction
with the action of the council.   If it was conclusively
shown Bange   had   received those   notices, and neith-
er protested against his suspension, took steps to be re-
instated, nor asserted his rights in any way, this argu-
ment would be sound.   But the notices of suspension
were sent to his Park avenue address, which was not
then his regular address; and in this respect the same

issue of fact is presented that arose regarding the notice to him of the call for contribution No. 132. The notices of suspension were improperly mailed, and it was for the jury to say whether, in point of fact, they were forwarded to Bange in Chicago, and he received one or both of them.

But it is further argued that the by-law did not require notice of suspension to be sent to him. We hold otherwise, both on the interpretation of the by-law and the custom of the Order. Notice was always given to a suspended member of his suspension. Moreover, this was essential in order that he might avail himself of his privilege to seek reinstatement within thirty days after the date of the suspension. It is the doctrine of this court, as well as of the tribunals of other jurisdictions, that by remaining silent after he is notified of a void expulsion or suspension, a member of a fraternal society will forfeit his rights in the society, including his insurance. This is because the existence of such associations depends on the prompt payment of dues, and they would be destroyed if members were allowed, after a suspension technically invalid, to retain their insurance without paying assessments. As has been pointed out in other opinions such a rule would put a suspended member on a better footing than an active one, because the former would continue to enjoy his insurance without paying for it; whereas the latter would pay. Bange died in March, 1905, four or five months after his suspension and seven months after he had paid any dues. If he received notice of the action of the council and did nothing in the premises, nor treated himself as a member of the order and bound to contribute to its burdens no recovery can be had on his benefit certificate. [Glardon v. Supreme Lodge, 50 Mo. App. 45; Miller v. Grand Lodge, 72 Mo. App. 499; Supreme Lodge v. Wilson, 66 Fed. 785.]

The judgment is reversed and the cause remanded. All concur.