| 50 | 45 |
| 72 | 505 |
| 50 | 45 |
| 76 | 390 |
| 50 | 45 |
| 101 | 1107 |

SARAH GLARDON *et al.*, Appellants, v. SUPREME LODGE, KNIGHTS OF PYTHIAS OF THE WORLD, Respondent.

St. Louis Court of Appeals, May 10, 1892.

1. **Mutual Benefit Societies:** VOID EXPULSION OF MEMBER: NECESSITY FOR APPELLATE PROCEEDINGS. Where the suspension of a member of a mutual benefit society by his lodge is without jurisdiction— as where it takes place upon a charge upon which the lodge has no jurisdiction to try him—his expulsion is null and void, and, being so, it is not incumbent upon him to take steps to have it reversed in a higher judicatory of the order.

2. ———: ———: NECESSITY FOR DISAFFIRMANCE BY MEMBER. But it is nevertheless incumbent upon him to affirm or disaffirm the act of expulsion within a reasonable time and in some distinct manner under the circumstances; and where he takes no steps of any kind to secure his reinstatement, allows dues to remain unpaid which had accrued and were payable prior to the date of his expulsion, and neither tenders such dues nor any which accrue subsequently, he must be taken to have acquiesced in and consented to the sentence of expulsion, and no recovery can be had for benefits dependent upon his continued membership. (*Mulroy v. Knights of Honor*, 28 Mo. App. 463, *qualified.*)

*Appeal from the St. Louis City Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*A. J. P. Garesche*, for appellant.

*Hough & Hough*, for respondent.

THOMPSON, J.—This action was instituted by the widow and children of John P. Glardon, deceased, to recover from the defendant the sum of $1,000 on a benefit certificate, known as a certificate of membership in the first class, issued by the defendant to the deceased. The case was tried by the court sitting as a jury; judgment was entered for the defendant, and the plaintiffs prosecute this appeal.

The answer sets up that John P. Glardon was not in good standing in the endowment rank at the date of his death, which took place on the fifteenth of October, 1883, and that he was not a member of such endowment rank. And it pleaded two special defenses as follows: *First.* That there was due from said John P. Glardon on the first day of July, 1882, to the secretary and treasurer of section number 7 of the endowment rank of the defendant, of which he was a member, and in which his certificate of membership was issued, an assessment of $1.10, designated as

assessment number 38, of which he was notified on the first day of July, 1882, and which he failed and refused to pay for the space of thirty days thereafter; that, under and by virtue of section 1 of article 7 of the constitution, governing sections of the endowment rank, said Glardon stood suspended from membership in said rank on the thirty-first day of July, 1882; and that, by reason of such suspension, he forfeited and lost all his rights under the benefit certificate sued on, and that the same became void and of no effect, and so continued until his death at the date aforesaid.

*Second.* The second special defense was that the said John P. Glardon was also a member of Damon Lodge, number 28, and that there was, on the first day of July, 1882, due from him to said lodge the sum of $1.50 as quarterly dues, which said dues were never paid or offered to be paid by him at any time prior to his death, on October 15, 1883, by reason whereof, under the constitution governing sections of the endowment rank, the said Glardon was not in good standing in said endowment rank at the date of his death.

The plaintiffs, by a reply, denied that said Glardon was ever notified of said assessment number 38, and that he either neglected or refused to pay the same; and denied that, at the date of his death, he was indebted to the lodge for quarterly dues, and averred that he was arbitrarily and without warrant or authority dropped from the list of members of the lodge by the secretary thereof about the fifteenth of July, 1882, and that the secretary thereafter refused to receive from him any payments whatever, due or payable to said lodge, or to the order, whether as a member of the order, the lodge or of the endowment rank, though tendered by and in behalf of said Glardon.

At the trial the defendant made the following admissions of evidentiary facts in favor of the plain-

tiffs: That John P. Glardon is dead; that the certificate named in the pleadings is the certificate which was issued to him by the defendant; that the persons who are plaintiffs herein are the proper plaintiffs in the case. On the other hand, the plaintiffs made the following admissions of evidentiary facts in behalf of the defendant: That assessment number 38, the non-payment of which was pleaded by the defendant, had been properly declared; and that, by the rules of the order, unless paid within thirty days after date of notice given to said Glardon of its assessment, in the absence of a valid cause he would by reason of the omission cease to be in good standing in the order, but that it was expressly denied that such a notice was ever given to him. Upon these admissions the plaintiffs rested.

Thereupon the defendant gave evidence tending to show, and not afterwards contradicted, that in every state of the Union there are subordinate lodges of the order known as the Knights of Pythias, and also a grand lodge, and over all a supreme lodge; also that there is what is known as the endowment rank, which is a department of life insurance connected with the order outside of and separate from both the subordinate and grand lodges, and under the direct control of the supreme lodge, but sustaining this connection with the order: That to be a member of the endowment rank it is necessary to be a member in good standing of some subordinate lodge. Several provisions of the laws governing the endowment rank and subordinate lodges were put in evidence, of which we quote the following:

Sec. 2, art. 4. "When a member voluntarily withdraws from membership in his lodge, or is suspended therefrom for non-payment of dues, or whenever his membership therein ceases from any cause, he thereby severs his connection with this rank and

forfeits all his rights therein and the endowment fund, and everything he may contribute thereto."

Sec. 3, art. 4. "If a member of a section is suspended from his lodge for any cause, and an appeal is taken from the action of the lodge, the action of the lodge stands in full force until reversed by the grand or supreme lodge, and membership in this rank ceases at the time of suspension from the lodge. Should the action of the lodge be reversed by higher authority, the standing of the member would be the same as if no action was had, and he must pay all assessments made during such suspension and pending said appeal."

Sec. 1, art. 6. "The secretary and treasurer shall keep a financial account with each member of the section, charging him with each assessment immediately upon notification of the same from the supreme master of exchequer, and crediting him upon payment of the same. He shall notify the supreme master of exchequer of every failure to pay the assessment within the prescribed time. He shall make a monthly report to the supreme master of exchequer on the first of every month and transmit therewith all moneys for all assessments, due and past due, belonging to the endowment or the expense fund of the endowment rank."

Sec. 4, art. 6. "Upon receiving from supreme master of exchequer notice of an assessment, he shall immediately forward the same to that officer, and give notice to each member of the class in which the assessment is made, in the prescribed form, and notify him to pay the assessment within thirty days."

Sec. 1, art. 7. "Upon receiving notice of an assessment each member shall at once pay the amount to the secretary and treasurer of the section to which he belongs. In case any member neglects for thirty

days after date of notice to pay said assessment, he shall stand suspended from that class of the endowment rank for which said assessment was made, and shall forfeit all claims upon the endowment fund belonging to such class, and the fact of such suspension shall be reported to the supreme master of exchequer in the monthly report, provided that any member suspended for the non-payment of assessments shall have the privilege of regaining all his privileges in that section by passing a new medical examination,'' etc.

It was also admitted by the plaintiffs, as an evidentiary fact in favor of the defendant, that dues to the lodge, as distinguished from assessments in the endowment rank on the death of a member, were $6 a year, payable in equal quarterly installments to the secretary and treasurer of the lodge; and that, on the first day of July, 1882, there became due to the lodge by John P. Glardon the sum of $1.50, payable within six months thereafter, under penalty of forfeiture of good standing.

The defendant further read the following from its manual, the same being found in section 1 of article 11: ''Every member shall be considered in good standing in the section as regards dues, who is not more than six months in arrears for dues to his lodge, and shall not be considered in good standing in the section as regards dues, who is more than six months in arrears for dues to his lodge.''

The defendant also gave evidence to the effect that the secretary of the lodge of which Glardon was a member, on the twenty-ninth of June, 1882, mailed to Glardon at his then residence a postal card notifying him of assessment number 38; that similar notices of all previous assessments had been sent to Glardon, who had answered them by paying all of his assessments except

number 38, which last assessment was never paid; that, between the thirtieth of July, 1882, which was the expiration of the thirty days allowed by the law of the order above quoted for the payment of the assessment, and the fourth day of August, 1882, the secretary of the lodge had a conversation with Glardon in which the latter stated that he was unable to carry his certificate any longer, that he had dropped the second class (the certificate sued on was in the first class), thinking that he could hold the first, but now he would have to drop both—he was sorry, but could not help it; that, on the fourth day of August, 1882, which was the day of the next meeting of the section, after the assessment became due, an entry was made in the minutes of the section of the suspension of Glardon from the first class on assessment number 38; but it does not appear that such an entry was required by any law or regulation. Glardon was reported to the supreme secretary of the endowment rank by the secretary of section 37 as having been suspended for non-payment of assessment number 38. Uncontradicted evidence was given to the effect that Glardon never thereafter tendered this assessment, and never tendered his quarterly lodge dues prior to the time of his death. The lodge dues, payable quarterly as already stated, were payable without notice, and the assessments of the endowment rank were payable upon notice. The method of sending notice by postal card of assessments of the endowment rank was the method which had been in use by the supreme master of exchequer, and by the secretaries of the different sections, from the beginning of the organization; that had always been the uniform custom and method of notification. The last payment made by Glardon of lodge dues was on the first day of July, 1882, and consisted of the sum of fifty cents.

These facts, which stand on the record as indisputable, and in favor of which the circuit judge, sitting as a jury, must have found, show that the plaintiffs are not entitled to recover,—unless they have stated and proved a case exhibiting a right to recover notwithstanding these facts. It will appear that these facts show no right of recovery in them for two reasons: *First.* Glardon was duly notified in the customary way of assessment number 38, and never paid the same, so that his membership became, by virtue of the laws of the order, *ipso facto*, forfeited at the expiration of thirty days after such notice, to-wit, on the thirtieth of July, 1882, which was more than fourteen months prior to his death. And, *secondly*, by reason of the fact that, having failed to pay his quarterly dues to his lodge for the period of six months from the first day of July, 1882, he ceased to be a member in good standing in the lodge, and for that reason forfeited his benefit certificate in the endowment rank, in conformity with the laws of the order above set out.

Let us now consider what was pleaded and proved with the view of taking the plaintiffs' case out of this predicament. It will be recalled from the foregoing statement that the plaintiffs by their reply pleaded that, on the fifteenth of July, 1882, Glardon was, by the secretary of the lodge, of which he was a member, arbitrarily and without warrant of authority dropped from the list of members; and that, on or about the eighteenth of July, 1882, the secretary of the lodge refused to receive from him any payments whatever, due or payable to the lodge, or to the order, whether as a member of the order, the lodge, or of the endowment rank, though the same were tendered to him by and in behalf of Glardon, and in which refusal the secretary of the order and lodge persisted until the death of Glardon. The plaintiffs gave no evidence whatever

tending to show that any such tender had ever been made, but the evidence of the defendant was to the effect that no such tender had ever been made. By this tender we mean to include the tender of assessment number 38 in the endowment rank, and of the quarterly lodge dues which accrued on the first of July, 1882.

As there was no evidence at all to support the tender of dues which was thus pleaded, the plaintiffs attempted to support the allegations of their reply by evidence of a state of facts which, in the view of their counsel, would excuse the making of a tender. That state of facts was that Glardon was, by a mere entry on the minutes of his lodge, suspended from membership therein for the period of ninety-nine years under the statute of the order above quoted, which authorizes the suspension of members who have been convicted of felony. The evidence tended to show that this suspension was a mere *ex parte* act of the lodge, and that it took place without notice to Glardon, or without any appearance, trial or investigation in the nature of a trial of the fact, whether or not he had been convicted of a felony; nor does it in any way appear that he had been so convicted, but the evidence was inferentially to the contrary. This evidence, also given by the plaintiffs, was to the effect that Glardon had been for a number of years engaged in St. Louis in selling lottery tickets; that, while he was so engaged, the legislature of this state passed an act making the sale of lottery tickets a felony; that, because he was engaged in that business regularly, making his living that way and making no disguise of the fact, the lodge undertook to suspend him in the manner stated. Such was the testimony given by Dr. Garcia, a witness for the plaintiffs who professed great friendship for Glardon and for his family, and who disapproved of the act of the

lodge in "casting him out," as he termed it. This attempted suspension must be conceded to have been illegal and a mere nullity.

The statute of the order, under which this *ex parte* expulsion was attempted, was probably the following, which is section 12 of article 11 of the constitution of subordinate lodges: "Any brother who may have been found guilty of felony by a court of competent jurisdiction, and has been, sentenced, shall be suspended from the order for a term not exceeding ninety-nine years, without any further trial, as soon as the fact of sentence has been passed *(sic)*, has been proved by public records, or witnesses duly sworn; and the fact of such suspension shall be immediately communicated to the grand keeper of records and seals, and by him communicated to each lodge in the jurisdiction once every quarter; and no member suspended for such cause shall ever be reinstated without the express consent of the grand lodge." The next section of the same article provides for an appeal to the grand lodge in the following language: "Sec. 13. An appeal may be in all cases taken to the grand lodge by the accused, or any five knights, from the decision of the subordinate lodge; of which appeal notice shall be given at the same or next succeeding meeting after the decision or action complained of was had."

Section 16 of the same article is as follows: "During the pendency of an appeal, the appellant shall occupy the position in which the action of the subordinate lodge placed him." Section 7 of article 12 is as follows: "A member suspended for a definite period, for cause, may be restored to membership upon the expiration of such period, so far as membership is concerned, and no application for reinstatement shall be required. During such suspension no dues or

assessments can be charged against the member so suspended.''

Section 8 of the same article is as follows: ''If the suspension be for a longer period than one year, the suspended member may, upon the expiration of one year, and after one month's written notice thereof, apply to the lodge for a commutation of the term of suspension, which application shall be in writing, and shall state the cause of suspension and the ground on which such application is based. If two-thirds of the members of this lodge, present at a stated meeting, vote in favor of such commutation, the same shall be certified under the seal of the court to the grand lodge, if in session, or to the grand chancellor during recess; and if such action of the lodge be approved, either by the grand lodge or the grand chancellor, the term of such member's suspension shall stand commuted, and he be restored to all the rights and privileges to which he was entitled before suspension.''

By the law of the order above set out the jurisdiction to suspend existed only in the case of a *conviction* of felony, and we must, therefore, take it that the lodge had no jurisdiction to suspend in this case. In dealing with a similar subject in *Mulroy v. Knights of Honor*, 28 Mo. App. 463, 474, we held that, where the suspension of a member of a mutual benefit society by his lodge is without jurisdiction,—as where it takes place upon a charge upon which the lodge has no jurisdiction to try or expel him,—his expulsion is null and void, and, being merely void, it is not incumbent upon him to take steps to have it reversed in a higher judicatory of the order, but that it leaves him clothed with the rights of membership, at least in respect of the mutual benefit fund of the society, to the same extent as though it had not taken place. We also said: ''Thereafter, if he paid no assessment, he was not

notified to pay any; and, consequently, such non-payment cannot now be set up as a ground of forfeiture." And we held that, where a void expulsion had taken place in November, 1884, and the member had died in December, 1885, without paying any subsequent dues or without any subsequent dues being demanded of him, his widow was entitled to recover on the benefit certificate, and we ordered a judgment in her favor. The doctrine of that case was reaffirmed by this court in *Hoeffner v. Grand Lodge*, 41 Mo. App. 359, 367, where the rule stated received a qualification that, in order to entitle the beneficiary to recover on the certificate after such void expulsion of the member, it must appear that the member himself treated the expulsion as void. In giving the opinion of the court in the last-named case, the presiding judge said: "A point is made that it does not clearly appear that the member exhausted his remedies by appeal to the grand lodge. Under the view we take, this question is immaterial. If the judgment was void, its affirmance on appeal could not validate it. Where a member seeks reinstatement by *mandamus* he must show that he has exhausted his remedies within the order; but where a judgment of expulsion is void, *and the member treats it as such*, he continues a member and need not seek reinstatement. It was in evidence in this case that all dues to the society were tendered, when payable, between the date of the alleged expulsion and the date of the member's death. There was no evidence that other duties were required of the member, which he failed to perform."

This we take to be a very salutary and necessary qualification of the doctrine of *Mulroy v. Knights of Honor, supra*. The propriety of it will be manifest, when it is considered that a benevolent order of this kind may, and, as in the present case, often does,

consist of many lodges and members scattered through all the states of the Union; that the class or rank of members, who became contributors in the case of a death of one of them, may belong to many lodges; that the indemnity of the beneficiaries of these members rests largely upon the integrity and right action of particular lodges over whose action the members of the particular rank or class can exercise no control; from which it would seem to follow that, in the case of an expulsion, even though void, taking place by the act of a particular lodge or its officers, the expelled member is so far under a duty to his co-contributors of the class or rank to which he belongs as at least to make known his want of acquiescence in the sentence of expulsion. The rights of such a member, as has been often pointed out, rest merely in contract; and, hence, his expulsion from the lodge and the order, and his consequent deprivation of his membership and of his life insurance under his benefit certificate, is no more than the breach of a contract; and, although taking place by an act void for want of jurisdiction, it is no more than an act which is void in the sense of being voidable at the election of the member thus expelled. Clearly he may, at his election, affirm or disaffirm it. Where, as in the *Mulroy case*, he resists the expulsion, though without appeal, and fails for a year to pay *subsequent* dues, because such dues are not demanded of him, it may be regarded that he has sufficiently manifested his disaffirmance of the sentence of expulsion; and where, as in the *Hoeffner case*, he continues to tender all dues when payable, this is clearly so.

But, in the present case, we see no evidence tending to show a disaffirmance by Glardon of the void sentence of expulsion. A right of appeal was open to him, but he did not exercise it. This, it is true, would not of itself be evidence of an acquiescence in the void

sentence of expulsion, as we held in the *Mulroy case.*
But where, as in this case, it further appears that an
assessment upon his benefit certificate was duly made
and he was notified of it, and also that his quarterly
lodge dues accrued *before* the void sentence of expul-
sion, and he thereafter totally neglected to pay either,
never made a tender or caused a tender to be made by
anyone for him of either, but, on the contrary, said to
the secretary that he should be obliged to give up his
benefit certificate, it is a necessary conclusion of fact,
nothing to the contrary appearing, that he intended to
acquiesce in the void sentence of expulsion, or other-
wise to cease to be a member of the order.

The present case also presents this peculiarity:
That the defendant does not set up this void sentence
of expulsion and claim that, by reason of it, Glardon
ceased to be a member on the fifteenth of July, 1882,
but it does set up his non-payment of assessment
number 38, for the period of thirty days prior to his
death, after notice, and also the non-payment of his
quarterly lodge dues accruing on the first of July,
1882, for a period of six months prior to his death; and,
under the laws of the order, it rests its conclusion that
his membership had been forfeited upon these facts.
But the plaintiffs plead the void sentence of expulsion,
accruing after these dues became payable, as a fact
excusing him from making any tender of these or any
subsequently accruing dues. If this position is tenable
in the case where a subordinate lodge, or the officers of
it, should make the mistake of expelling or suspending
a member without jurisdiction, or in violation of the
laws of the order, the expelled or suspended member
might rest indefinitely in his state of expulsion or sus-
pension without paying subsequent dues, and, in the
event of his death, the beneficiary in his certificate
would be entitled to the sum therein assured, equally

as though he had continued to pay all his dues down to the time of his death. This, as has been pointed out by the counsel for the defendant in this case, would place an expelled or suspended member, in the case of a void expulsion or suspension, in a better condition than a member in good standing who should pay his dues. It would put a premium upon his negligence in not taking means to exhaust his remedy of reinstatement within the order, in not appealing to the judicial courts after having so exhausted his remedy within the order, by *mandamus*, or otherwise, and at least in not giving some evidence of his continued dissent, by tendering his stated dues, or otherwise; and it would work an obvious injustice to the other members of the class to which he belongs, who must contribute the sum named in his benefit certificate in the event of his death. Such a certificate involves a scheme of mutual insurance, under which the living members of a class contribute a certain sum to make up a fund for the benefit of the widow and children or other beneficiary of a deceased brother. There is an obvious injustice in requiring them to make a contribution to pay such a benefit to the family of a deceased member, who has for a long time ceased himself to make any contribution on his part; and this is so, although he may have ceased in consequence of a void suspension or expulsion, which he has taken no steps to resist or disaffirm, but in which he has passively acquiesced. We take the just rule to be that, even in the case of a void expulsion or suspension, the expelled or suspended member is under a duty to his co-contributors to affirm or disaffirm the act of expulsion or suspension within a reasonable time, and in some distinct manner under the circumstances; and that where he takes no steps of any kind to secure his reinstatement, allows dues which had accrued and were payable *prior* to the date of his expul-

sion to remain unpaid, and neither tenders such dues nor any subsequently accruing dues, he must be taken to have acquiesced in and consented to the sentence of expulsion or suspension.

We, therefore, laying out of view the declarations of law given and refused by the learned judge of the circuit court, must hold that the defendant had established an incontestable state of facts showing, as a conclusion of law, that the plaintiffs have no right of recovery under the doctrine of this court in the case of *Hoeffner v. Grand Lodge*, 41 Mo. App. 350; and we accordingly order that the judgment of the circuit court be affirmed. All the judges concur.