MINNIE E. BANGE, Appellant, v. SUPREME COUNCIL LEGION OF HONOR OF MISSOURI, Respondent.

**St. Louis Court of Appeals, December 2, 1913.**

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Action for Death Benefit: Prima-Facie Case. In an action on a death benefit certificate issued by a fraternal beneficiary association, the certificate, coupled with proof of death of insured, make out a prima-facie case, casting on defendant the burden of establishing its defense.

2. ———: Nonpayment of Assessment: Notice. Where a by-law of a fraternal beneficiary association required notice of assessments levied to be mailed to the members at their regular addresses, the mailing of such notice was a condition precedent to the right of the association to declare a forfeiture of a benefit certificate because of nonpayment of an assessment.

3. ———: ———: By-Laws Construed. The by-laws of a fraternal beneficiary association required members to pay assessments within thirty days after notice thereof was mailed to their regular addresses, and provided that a failure to do so before the first meeting of the local lodge after the expiration of the thirty days operated to suspend the member, but that the local lodge, by a majority vote, might make the payment for the delinquent. The local lodge had established the custom of deferring action on the question as to whether it would pay a delinquent's assessment until the next meeting after the assessment was levied. *Held,* that the by-laws were not self-executing, and that a member would not be suspended for nonpayment of an assessment, even though notice thereof was duly mailed to his regular address, until the local lodge had refused to pay the assessment and had declared him suspended.

4. ———: Notice of Assessments. The parties to an insurance contract may agree that the mailing of a notice to the regular address of the insured constitutes notice to him; and hence where a fraternal beneficiary association and a member made such an agreement, a notice of an assessment levied, mailed to the member's regular address, was notice to him, whether he received it or not.

5. ———: Nonpayment of Assessment: Sufficiency of Notice. In an action on a death benefit certificate issued by a fraternal beneficiary association, defended on the theory that insured had forfeited his certificate by reason of his failure to pay an assessment, *held* that whether notice of the assessment was mailed to insured's regular address, as required by the certificate and by-laws, was a question for the jury, under the evidence.

6. ———: ———: ———. Where the by-laws of a fraternal beneficiary association required notice of an assessment and of a suspension for nonpayment thereof to be mailed to the regular address of the member affected, and provided that a member who was suspended for nonpayment of an assessment could get reinstated by payment of the assessment within thirty days, proof of the member's actual receipt of the notice, in time for him to have exercised his right toward securing reinstatement within the thirty day period, is necessary to sustain his suspension, if the notices were not mailed to his regular address.

7. ———: ———: ———. Under a by-law of a fraternal beneficiary association, requiring notice to be given a member of his suspension for nonpayment of an assessment, it is necessary to sustain the suspension that he be given notice thereof by the association, and the fact that he obtained knowledge thereof in some other way will not suffice.

8. ———: ———: ———: "Regular Address." In an action on a death benefit certificate issued by a fraternal beneficiary association, where the question as to whether notice of an assessment had been sent to the "regular address" of insured, as required by the by-laws of the association, was in issue, an instruction which made the regular address of insured depend upon his intention of making that place his place of residence was erroneous, since the expression "regular address" merely referred to the place where insured would be most likely to get his mail.

9. ———: ———: Acquiescence in Illegal Suspension. Even though the suspension of a member of a fraternal beneficiary association is void, he is nevertheless under a duty to his

fellow-members to affirm or disaffirm the suspension in a distinct manner and within a reasonable time; and hence where a member, who is illegally suspended, although having knowledge of the suspension, takes no step to secure his reinstatement, allows assessments, which had accrued and were payable prior to his suspension, to remain unpaid, and does not tender such assessments to the association, nor any subsequently accruing, he will be treated as having acquiesced in his illegal suspension and having abandoned his insurance.

10. ———: ———: ———: Notice. In order that the acquiescence of a member· of a fraternal beneficiary association in his illegal suspension from membership be binding, it is not necessary that he be given notice of the suspension by the association, as required by its by-laws, but it is sufficient if he acquires knowledge of the suspension in some other way.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED.

*James J. O'Donohoe* for appellant.

(1) It is well settled that proof of the issuance of the beneficiary certificate and death of the member establish a prima-facie case. Winn v. Modern Woodmen, 157 Mo. App. 1; Bacon, Ben. Societies and Life Ins. (3 Ed.) sec. 414; Mulroy v. Knights, 28 Mo. App. 463; Stewart v. Legion of Honor, 36 Mo. App. 319; Force v. Knights of Honor, 41 Mo. App. 106; Chadwick v. Triple Alliance, 56 Mo. App. 478; Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496; McReynolds v. Railroad, 115 Mo. App. 680; O'Malley v. Railroad, 113 Mo. 319; Boon v. Railroad, 20 Mo. App. 235; Gibson v. Zimmermann, 27 Mo. App. 90. The defendant's amended answer did not state facts sufficient to constitute any defense, and hence the plaintiff's objections to the introduction of any evidence on the part of the defendant should have been sustained. The court erred in refusing plaintiff's peremptory instruction at the close of the case. Bur-

chard v. Western Commercial Travelers Assn., 139 Mo. App. 606; Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496; Chadwick v. Order of Triple Alliance, 56 Mo. App. 474; Force v. Knights of Honor, 41 Mo. App. 117; Mulroy v. Knights of Honor, 28 Mo. App. 467; Siebert v. Order of Chosen Friends, 23 Mo. App. 268; Dazell v. Ins. Co., 176 Mo. 253; May v. Crawford, 150 Mo. 504. (2) The defendant's law in reference to suspension for nonpayment of contributions is not self-executing. Bange v. Legion of Honor, 153 Mo. App. 154; Bange v. Legion of Honor, 128 Mo. App. 461; Mulroy v. Knights of Honor, 28 Mo. App. 468. The recorder of the local council had power to and did waive the prompt payment of contributions. Jones v. Ins. Co., 155 S. W. 1106; Modern Woodmen v. Angel, 127 Mo. App. 94; Andre v. Modern Woodmen, 102 Mo. App. 377; Cauveren v. Ancient Order of Pyramids, 98 Mo. App. 433; Courtney v. Relief Assn., 101 Mo. App. 261; Frame v. Woodmen of the World, 67 Mo. App. 127; Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Benefit Assn., 77 Mo. App. 586; McMahon v. Maccabees, 151 Mo. 522; Cline v. W. O. W., 111 Mo. App. 601; Walton v. Fraternal Aid Association, 149 Mo. App. 493. Defendant could not declare a forfeiture on account of the nonpayment of the contribution for the month of October, 1904, until it had notified Bange "of its decision to carry him no longer and had given him a reasonable opportunity to pay his arrearages." Britt v. Woodmen of the World, 153 Mo. App. 710; Seehorn v. Catholic K. of A., 95 Mo. App. 233. (3) 2094 Wilcox avenue, Chicago, Illinois, was Bange's regular address. Bange v. Legion of Honor, 128 Mo. App. 461; Bange v. Legion of Honor, 153 Mo. App. 154. The question as to what was Bange's regular address was a question of law for the court, and it was error for the court to give instructions to the jury that referred to their determination this question of law. Williams v. Williams, 132 Mo. App. 266; Mann v.

Railroad, 123 Mo. App. 486; Meyers v. Casualty Co.,. 123 Mo. App. 682; Young v. VanNatta, 113 Mo. App. 551; Hendley v. Refinery Co., 106 Mo. App. 20; Mexico v. Jones, 27 Mo. App. 534; Cornovski v. Transit Co., 207 Mo. 263; May v. Crawford, 150 Mo. 527. It was conclusively shown that Chicago was Bange's regular address, and it was not the province of the jury to pronounce the legal conclusions following from the conclusively ascertained facts. Davies v. Railroad, 159 Mo. 7; Furber v. Bolt & Nut Co., 185 Mo. 301. Even if notices of contributions were addressed and mailed to 2637 Park avenue, the same was insufficient under the defendant's laws. Hannum v. Waddill, 135 Mo. 153; Siebert v. Chosen Friends, 23 Mo. App. 272; Force v. Knights of Honor, 41 Mo. App. 117. (4) The court erred in giving defendant's instructions, and erred in refusing to give instructions requested by plaintiff. The instructions given by the court of its own motion were erroneous. Bange v. Legion of Honor, 153 Mo. App. 154; Bange v. Legion of Honor, 128 Mo. App. 461; Davidson v. Transit Co., 211 Mo. 320; Wolfe v. Supreme Lodge, 160 Mo. 675; Christian v. Ins. Co., 143 Mo. 460; Summers v. Ins. Co., 90 Mo. App. 691. (5) No presumption that a letter reached the addressee arises unless it appears that the person resided in the city or town to which the letter was addressed. Goodwin v. Assurance Society, 97 Iowa, 226. The failure to give notice as prescribed in the laws would not be excused even if Bange omitted to notify the recorder of his change of address. Wachtel v. Widows and Orphans Society, 84 N. Y. 28. The contents of a notice, including the list of deaths and the amount due upon the contribution, are as necessary to be proved as the fact of service. Burchard v. W. C. T. A., 139 Mo. App. 622; Supreme Lodge v. Johnson, 78 Ind. 110; Agnew v. A. O. U. W., 17 Mo. App. 254. (6) Acquiescence and abandonment can-

not be invoked where the suspension is void. Wayland v. Indemnity Co., 166 Mo. App. 221; Johnson v. Ins. Co., 166 Mo. App. 261.

*Kinealy & Kinealy* for respondent.

(1) Plaintiff's objections to the definiteness of the answer are not well founded. But even if they were, they come too late since they are waived by replying to the merits. Ewing v. Vernon Co., 216 Mo. 681. (2) The two prior opinions of this court in this case dispose of appellant's points adversely to her, and those opinions are the law of this case on this appeal. Taussig v. Railroad, 186 Mo. 269; Hayward v. Smith, 187 Mo. 464; Mill Co. v. Sugg, 206 Mo. 148; Railroad v. Bridge Co., 215 Mo. 286. (3) Defendant's law as to the payment of contributions is self-enforcing. Bange v. Sup. Council, 128 Mo. App. 461. (4) The question as to what was Bange's regular address was one for the jury. Bange v. Legion of Honor, 153 Mo. App. 154. (5) The letter written by Mr. Lindsley was no justification for Bange's failure to pay his contributions. Bange v. Sup. Council, 128 Mo. App. 461. (6) Appellant's instruction requiring notice of suspension from the recorder of Irving Council as well as from the supreme recorder was properly refused. No law required it and no established custom known to Mr. Bange to give it was shown. Such a custom would moreover have to be pleaded. Staroske v. Publishing Co., 235 Mo. 67. (7) Even if the question were here up for decision, which it is not, it would have to be held that the allegation that the contribution was duly called, is sufficient. Edwardson v. Garnhart, 56 Mo. 81. (8) Moreover, the definite and specific pleading, in plaintiff's reply, of defendant's laws as to notices and calls for contributions would supply any deficiency in that regard in the answer. Garth v. Caldwell, 72 Mo. 622; Lee v. Railroad, 195 Mo. 400; Shelton v. Rail-

road, 167 Mo. App. 404. (9) If Bange had knowledge or notice of his suspension and offered no objection or protest he thereby acquiesced therein, and hence the instruction given by the court on the subject of acquiescence was correct. Bange v. Sup. Council, 128 Mo. App. 461.

NORTONI, J.—This is a suit on a benefit certificate. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

Defendant is a fraternal association, and the defense is that the insured forfeited his membership through nonpayment of contributions prior to his death and because of which he was suspended from the order. A second defense is to the effect that, though the suspension of the insured member was illegal, he nevertheless acquiesced therein, after having received due notice of such suspension.

The case has been reviewed here on two prior appeals. We find the relevant facts to be substantially the same as those stated on the first appeal. We copy that statement here as sufficient for the purposes now in hand. [See Bange v. Sup. Council, etc., 128 Mo. App. 461, 105 S. W. 1092.]

"The insured was Julius A. Bange. He was a member of Irving Council No. 2 of the defendant order, the Supreme Council Legion of Honor of Missouri. Minnie Bange was the wife of the insured and the beneficiary of the certificate, in which the order obligated itself to pay her $2,000 on due notice and proof of the death of her husband. Bange joined the order and took out the certificate April 5, 1902. At that time he was a resident of the city of St. Louis and lived at 3546 Henrietta street. He died February 19, 1905, in Texas, while traveling there as a salesman for a Chicago business concern. Subsequently Bange moved from No. 3546 Henrietta street, St. Louis, to 2637 Park avenue. This removal was in October,

1903, and plaintiff with his family, consisting of himself, wife and child, went to live with his mother-in-law, Mrs. Hobie. Thereafter the recorder of Irving Council would sometimes call at 2637 Park avenue to collect the dues and sometimes send a written notice of a call for payment to that address. A by-law of the order provided that a notice to pay dues should be 'directed to the regular address of the member and deposited in the post office,' provided further that this should be a sufficient notice to bind a member. Contributions to the relief fund were called monthly and during the year 1904, Bange's dues were $1.39 a month. In May of that year and while still residing at 2637 Park avenue, he paid the order six dollars, which sum discharged his dues to June 30, 1904, and left thirty-three cents standing to his credit. The call due June first and payable as late as June 30th, was No. 128, and was the last call paid by Bange. During the summer and sometime, it seems, after June, Bange, being out of employment, went to Chicago to seek work. When he left St. Louis he stored his furniture in the cellar of his mother-in-law's home on Park avenue and his wife and child remained there. His wife visited him for six weeks during the summer in Chicago. Bange worked for a time in Chicago and in January, 1905, got a position as traveling salesman, his territory being in Texas. In the meantime, he had lived with his sister at No. 2094 Wilcox avenue, Chicago; that is to say, he stayed at said number from some time in July, 1904, until January, 1905, and then went to Texas. There is evidence tending to show his mail address continued to be in Chicago, or that such of his mail as came to 2637 Park avenue, St. Louis, was forwarded to his Chicago address. Mrs. Hobie swore that during the summer of 1904, after Bange had left St. Louis and while his wife was visiting him in Chicago, Malcolm A. Lindsley, the recorder of Irving Council, called once or twice at 2637 Park avenue

to collect Bange's dues and Mrs. Hobie told Lindsley Bange's Chicago address. She testified further Lindsley said the lodge would keep up the assessments for a year. It is not shown positively that Mrs. Hobie communicated this statement to Bange, but it is fairly inferable that she did. This occurred in August, 1904. In point of fact the Irving Council did pay Bange's dues for three months; that is, for July, August and September, and had previously paid his calls for April, May and June, though for the latter three months he had reimbursed the council. Such payment of dues for delinquents was in accordance not only with the custom, but with a by-law of the order. Said by-law is as follows:

" 'Each member shall pay the amount due as his contribution to the relief fund within thirty days from the date of such call, and any member failing to pay such contribution on or before the first meeting of his council after the expiration of said thirty days, shall stand suspended from the order and from all benefits therefrom: provided, however, that any council may, by a majority vote of the members present at said meeting, authorize the payment of a member's contribution as a loan or as a gift, from its general or any fund, other than the relief fund, but such payment must be made within the time herein specified.'

"There is another by-law which provided methods for the reinstatement of suspended members. Within thirty days from the date of suspension a member may file with the recorder of the council a written application for reinstatement and pay to said recorder all dues and fines in arrears from the date of suspension and thereupon be reinstated. If the suspended member waits ninety days after his suspension before seeking reinstatement, he must file a written application, accompanied by the certificate of some physician and pay up his contributions. In such instance he can only be reinstated by making an application in that

form and obtaining a favorable vote of his council. If a suspended member waits longer than ninety days before applying for reinstatement, it seems he must be elected as a new member. The testimony of Lindsley was the council usually carried a delinquent for three months or sometimes longer when solicited. On October 1, 1904, call No. 132 for contributions from members was issued and a notice of the call sent by the recorder Lindsley to Bange to No. 2637 Park avenue, so Lindsley swore, and further, that he sent a notice of said call again on November first. Lindsley is a man upwards of seventy years old. His testimony on this point is that he would write out a large number of notices of assessment, thirty or more, place them in stamped and addressed envelopes, take a batch to a mail box and deposit them. His testimony is quite positive that he mailed Bange on October and November first, notices of the call for assessment No. 132. This assessment would be $5.67 for three months' dues. Mrs. Hobie's testimony tends to prove no notice was sent; for she swore that, to her knowledge, no letters came for Bange to her home with the card of Irving Council stamped on the corner of the envelope. Lindsley testified the notices were sent out in envelopes with said card on them. Mrs. Hobie swore any mail that came to her home for Bange was forwarded to Chicago; that she told Lindsley Bange's regular address was 2094 Wilcox avenue, Chicago, and Lindsley promised to write to him at that address. The by-law of the order regarding the duties of the recorder, provided that said officer of each subordinate council should 'conduct all its correspondence.' On November 9, 1904, Bange was suspended and his suspension was entered on the minutes of Irving Council at one of its monthly meetings, for nonpayment of dues. Lindsley swore he sent a notice of his suspension to him and the supreme recorder of the Legion of Honor, whose office is at 410 Fullerton Building, St. Louis,

testified that after he was notified of the suspension
by Irving Council, he, too, sent a notice of it to Bange.
Both notices were addressed to 2637 Park avenue, St.
Louis, Missouri. Some correspondence took place be-
tween Bange and Lindsley after the former went to
Chicago. Bange must have written to Lindsley in the
fore part of August, because, on the 18th of that
month, Lindsley wrote to him as follows:

" 'IRVING COUNCIL NO. 2, L. OF H.
" 'Meets Second and Fourth Wednesdays Masonic
Temple, Grand and Finney Avenues.
" 'M. A. Lindsley, Recorder, 3696 Finney Ave.
" 'St. Louis, 18th August, 1904.
" 'Bro. J. R. Bange,
" 'Chicago, Ill.
" 'Dear Sir: I am in receipt of your esteemed
favor of recent date. Irving Council will not suspend
you; it will pay your assessments for a reasonable
length of time hoping that you may find employment
and be able to reimburse them. Present my regards to
your wife, who, I learn, is with you. After the receipt
of your letter I called to see her to assure her Irving
Council would treat you kindly and from her mother
learned that she was with you.
" 'Fraternally,
" 'M. A. Lindsley, R.'

"That letter was offered in evidence by the plain-
tiff, but excluded by the court. It was in an envelope
addressed as follows:
" 'J. A. Bange, Esq., Chicago, Illinois, 2094 Wil-
cox Avenue. Return to 3696 Finney avenue. Post-
mark St. Louis, August 18th, 1904, 2 p. m. Chicago
postmark, August 19th, 1904, 9 a. m.'
"The court admitted the envelope in evidence.
Bange never afterwards paid dues, tried to be rein-
stated, or participated in any way in the proceedings
of Irving Council."

For a further statement, see Bange v. Sup. Council Legion of Honor, 153 Mo. App. 154, 132 S. W. 276.

Of its own motion, the court instructed the jury as follows:

"On the points of law arising in this case the court instructs you as follows:

"1. The evidence establishes that the defendant is a fraternal benefit association operating under the lodge system of government, that plaintiff is the wife of Julius A. Bange, deceased, who became a member of Irving Council No. 2 (a subordinate council of defendant), in the year 1902, that the defendant issued the certificate mentioned in the evidence and agreed to pay plaintiff the sum of $2000 on the death of her husband, provided he was a member of defendant order in good standing at the date of his death.

"Defendant order sets up a forfeiture of the membership of Julius A. Bange prior to his death on the ground of nonpayment of the October, 1904, contribution.

"Contribution for October, 1904, was not paid, and on November 9, 1904, Irving Council No. 2 declared deceased suspended and his membership in defendant order forfeited. Julius A. Bange died February 19, 1905.

"2. In order for the plaintiff to recover in this action it is not necessary for her to prove that Bange at the time of his death was in good standing in the defendant order, but on the contrary, to defeat recovery the defendant must establish by a preponderance or greater weight of the evidence that Bange was lawfully suspended on the 9th day of November, 1904, or that said Bange acquiesced in such suspension, although you may believe and find from the evidence that such suspension was illegal.

"3. Before the defendant can avail itself of the defense of acquiescence in the suspension on the part of deceased it must establish by a preponderance or

greater weight of the evidence that defendant mailed a notice addressed to Bange's regular address informing him of said suspension *or that he had notice of said suspension in some other way.*

"4. The law presumes knowledge on the part of deceased, Julius A. Bange, of the constitution and general laws of the defendant order and of the by-laws of Irving Council No. 2, which were in force during the entire time that he was a member of defendant organization.

"5. Unless you believe and find from the evidence that the recorder of Irving Council No. 2 deposited in the United States mail a notice to deceased directed to his regular address of the call of the October contribution, 1904, or that said deceased received such notice in some other manner and in time to have enabled him to pay such contribution within thirty days from the date of such notice—the limit named in the law of defendant order; and unless you further find and believe from the evidence that defendant's supreme recorder deposited in the United States mail a notice to deceased directed to his regular address informing him of his suspension on November 9, 1904, for the nonpayment of the October contribution, *or that deceased received notice of such suspension in some other manner, you will find a verdict for plaintiff.*

"12. The letter read in evidence dated August 18, 1904, signed by M. A. Lindsley, the recorder of Irving Council No. 2, was no excuse or justification for the nonpayment of the October contribution by deceased. This letter was introduced solely for the purpose of evidence relating to Lindsley's knowledge of where notice should have been sent of the call of the October contribution.

"13. Even though you may find and believe from the evidence that at the time of the death of Bange he was indebted to defendant for dues and per capita

tax you are instructed that his delinquency in these respects cannot affect the right of this plaintiff to recover in this action.

"14. Even though you may find and believe from the evidence that at the time of the death of Bange he was indebted to defendant for contributions for the months of July, August, September and December, 1904, and January and February, 1905, you are instructed that the nonpayment of said contributions for said months or for any of said months must not be taken into consideration by you in determining the question whether deceased was lawfully suspended for the nonpayment of the October, 1904, contribution.

"15. If you find for the plaintiff you will allow her the sum of two thousand dollars with interest thereon at the rate of six per cent per annum from the 18th day of July, 1905 (date of filing suit) to this date."

We have italicized portions of the instructions given by the court of its own motion, with the view of inviting attention thereto in the opinion.

At the instance and request of defendant, the court instructed as follows:

"6. The defendant's laws read in evidence required the recorder of Irving Council No. 2, of which the deceased was a member, to send notices of contributions which he was required to pay to his regular address. The words 'regular address,' as used in said by-laws, means the place where the member is known by the recorder to receive customarily his mail. That is, the place where he is known to expect his mail to be addressed to him, and where he usually receives it, although he may not always be present at such place.

"In determining whether at the time mentioned above the regular address of the deceased was at No. 2637 Park avenue, in the city of St. Louis, Missouri, or at No. 2094 Wilcox avenue, Chicago, Illinois, you are to take into consideration all the facts and circum-

stances in evidence in this case tending to show whether the deceased expected to receive regularly his mail at one place rather than at the other in the absence of any special direction, and also tending to show what knowledge or information, if any, the recorder of Irving Council No. 2 had of this intention.

"If you believe and find from the evidence in this case that No. 2637 Park avenue, in the city of St. Louis, Missouri, was the regular address of the deceased at the time mentioned above, and that the recorder of Irving Council on or about the first day of October, 1904, deposited in the United States mail postage pre- paid, addressed to the deceased to such place a notice or call for a contribution due from him for the month of October, 1904, that said contribution was not paid by the deceased or by any person for him on or before the first meeting night of said council in November, 1904, and that thereupon he was suspended by said council at said meeting for the nonpayment of said contribution, and that notice of such suspension was deposited in the United States mail by the Supreme Recorder of defendant, postage prepaid, and addressed to the deceased at said number on Park avenue, in the city of St. Louis, and that thereafter the deceased made no application to be reinstated in said council prior to his death, then your verdict must be in favor of the defendant.

"7. If you believe from the evidence that on or about the first day of October, 1904, the recorder of Irving Council deposited in the United States mail, postage prepaid, and addressed to deceased, Julius Bange, at 2637 Park avenue, St. Louis, a notice or call for a contribution due from him for the month of October, 1904, and that such notice was forwarded from said Park avenue address to the deceased at 2094 Wilcox avenue, Chicago, Illinois, and was there re- ceived by him in time to have enabled him to have paid said contribution within thirty days from the

date of said notice and that he failed to make ·such payment and was suspended by said council at its first meeting in November, 1904, on November 9th, then the question of the regular address of the deceased is immaterial and your verdict must be in favor of the defendant.

"8. If you believe from the evidence that on or about October 1st, 1904, M. A. Lindsley, recorder of Irving Council, sent to Julius A. Bange a notice requiring him to pay contribution No. 132, within thirty days from said date, and sent said notice by mail addressed to said Bange, at 2637 Park avenue, and that that was the address to which said Lindsley had there-tofore been in the habit of sending these notices to said Bange, and that said Bange knew that fact, and if you further find from the evidence that when said Bange went to Chicago about June, 1904, he did not go there with the *intention of making a permanent change in his place of residence,* but only went there for the purpose of seeking employment, and afterwards returned to St. Louis, and if you further believe from the evidence that said Lindsley, when he sent said notice to said Bange at 2637 Park avenue, did not know whether or not said Bange was in Chicago, and did not know and had no reason to know that he had gone to Chicago with an intention of remaining permanently, then the court instructs you that if said Bange neglected to pay said contribution No. 132 on or before the first meeting night of Irving Council in November, 1904, and if neither said council nor anyone else paid said contribution for him, then said Bange became suspended from membership in defendant organization, and your verdict must be for the defendant.

"9. If you believe from the evidence that on or about the first day of October, 1904, M. A. Lindsley, recorder of Irving Council, mailed to Julius A. Bange a notice, notifying him that contribution No. 132 had

been called, payable within thirty days from October 1, 1904, and sent said notice by mail to the said Bange, addressed to him at 2637 Park avenue, and that said notice was received at said address and at once forwarded by mail by the wife or mother-in-law of said Bange to him and addressed to him at 2094 Wilcox avenue, Chicago, Illinois, and was received at said Chicago address in time to have enabled said Bange to have paid said assessment within said thirty days, and that the said Bange failed to pay said assessment No. 132, and was at the first meeting of Irving Council in November, 1904, and on November 9, 1904, declared suspended from membership, then the plaintiff is not entitled to recover, and your verdict must be in favor of the defendant, provided you further believe and find from the evidence that defendant's Supreme Recorder deposited in the United States mail a notice to the deceased directed to his regular address informing him of such suspension, *or that deceased received notice of such suspension in some other manner.*

"10. If you believe from the evidence that Julius A. Bange was declared suspended at the meeting of Irving Council held on November 9, 1904, and his suspension reported to the Supreme Recorder of defendant, and that notice of his suspension was mailed to him by said Supreme Recorder directed to him at 2637 Park avenue, St. Louis, Missouri, and that said notice was at once forwarded by mail from said Park avenue address by the wife or mother-in-law of said Julius A. Bange, to his Chicago address, No. 2094 Wilcox avenue, Chicago, Ill., and was received at said Chicago address in time to have enabled said Bange to have applied for reinstatement as a member of Irving Council, within thirty days from date of said suspension, and that thereafter he made no application to be reinstated as a member of defendant organization or of said Irving Council and neither paid nor offered to pay any assessments or dues and never did anything

indicating that he considered himself a member of said council or of defendant or indicating any desire on his part to continue such membership, then the verdict of the jury must be in favor of defendant.

"11. If Julius A. Bange in any manner obtained knowledge that he was or had been suspended from membership in the Legion of Honor, then if he did not desire to acquiesce in such suspension it was his duty within a reasonable time to make known such fact to the officers of the defendant or the officers of said Irving Council, and if you believe from the evidence that after becoming aware of said suspension from membership in Irving Council on November 9, 1904, if you find as a fact that he did so become aware thereof, he took no steps to protest against such suspension or to procure his reinstatement as such member, or in any way express to any officer of the defendant or to said Irving Council that he did not consent to such suspension then the plaintiff is not entitled to recover, and your verdict must be in favor of the defendant."

We have italicized portions of defendant's instructions, also, with the view of inviting attention thereto in the opinion.

It appears the issues were fairly presented to the jury by the instructions given by the court of its own motion and for defendant, except in so far as the italicized portions are objectionable.

The benefit certificate, together with the established fact of the death of the insured, made a prima-facie case for plaintiff, and it devolved upon defendant, first, to show a forfeiture of the rights of the insured because of his nonpayment of contribution No. 132, after notice of its call was either made out and deposited in the United States mail, directed to his regular address, or that such notice was actually received by him through the process of forwarding, in time to have enabled him to make payment of the

contribution before the thirty days stipulated in the by-laws had expired, and that notice of his suspension was duly mailed as well; or, second, that the insured had acquiesced in his suspension from the order and to the forfeiture declared, with full knowledge of the fact, and treated the matter of his relations with defendant as an insured severed thereby.

There are two defenses set forth in the answer. The first goes to the effect that the insured, Julius A. Bange, forfeited his membership in the order and likewise his insurance through failing to pay contribution No. 132, duly called in October 1, 1904, and of which he was then notified, through the mailing of a notice thereof by the recorder to his regular address, and through the action of Irving Council No. 2, of which he was a member, on November 9th thereafter, in refusing to pay the contribution for him and declaring him suspended for nonpayment thereof, followed by a proper notice of such suspension, duly mailed him by the Supreme Recorder. This defense, if established to the satisfaction of the jury, would suffice, of course, to defeat plaintiff's suit. The second defense set forth in the answer goes to the effect that plaintiff was declared suspended by the local council as a member of the order on November 9th, for the reasons above stated, and, with full knowledge of such suspension, he thereafter acquiesced. By this defense it is sought to preclude plaintiff's right of recovery through the acquiescence of her husband in his suspension from the order, whether such suspension was regularly made or not, for the evidence tends to show that he paid no contributions thereafter and did nothing to signify his intention to continue his relations as a member of the order. The instructions above copied deal with both of these defenses and are to be viewed accordingly.

Defendant's by-law required the notice of contributions called to be mailed to the member at his

regular address, and, of course, this was a condition to be complied with by defendant before a forfeiture could be declared. After the mailing of such notice to the regular address, an insured member is entitled to thirty days in which to pay the contribution. The by-law further provided that, in event a member omitted to pay, then the local council might, by a majority vote, assume the burden and make the payment for him. The custom established goes to the effect that the local council acted on such matters at the next meeting after the contribution was called. In the instant case, the contribution was called on October first and the council acted thereon as if a failure to pay appeared on November ninth thereafter and declined to make the payment for Bange. Having so declined to make the payment for him, the council declared Bange suspended for the nonpayment of contribution No. 132. Because the by-law vested a discretion in the council to assume or not the burden of paying a contribution for a member and the custom obtained thereunder to defer action until the next meeting, we declared, on both the first and second prior appeals, that the by-law was not self-executing in operating *ipso facto* the suspension of the member at the end of thirty-day period after notice of the contribution was mailed by the recorder to his regular address. The suspension, if made, is necessarily deferred, even though the notice is mailed to the regular address of the member, by the authorized proceedings of the council under the by-law and the custom established in connection therewith, until the action of the council is had and its refusal to pay the contribution and the suspension of the member declared. [See Bange v. Supreme Council Legion of Honor, 128 Mo. App. 461, 105 S. W. 1092; s. c., 153 Mo. App. 154, 132 S. W. 276.]

There is evidence tending to show that 2637 Park avenue, St. Louis, was the regular address of Bange

and that the recorder of the local council, Lindsley, mailed the call for contribution No. 132 to him at that address, also that the supreme recorder mailed to the same address a notice of the suspension of Bange within due time after it was made. Of course, if such address—2637 Park avenue, St. Louis—was the regular address of Bange, then the notices above mentioned sufficed, whether he received them or not, for the parties may agree, and it is competent to contract, that such mailing of the notices to the regular address constitutes notice to the member. [See Hannum v. Waddill, 135 Mo. 153, 36 S. W. 616.] But it appears that Bange went to Chicago during the summer, with a view to seek employment there. It appears, too, that his wife joined him there for a time. While in Chicago, Bange received his mail at 2094 Wilcox avenue, the residence of his sister, with whom he stopped. The evidence reveals that Lindsley, the recorder, knew such to be the fact, for he wrote Bange a letter directed to his Chicago address in August. On this it is urged that we should declare as a matter of law that 2094 Wilcox avenue, Chicago, was Bange's regular address. It is conceded throughout the case that Lindsley did not direct the call for contribution No. 132, nor was the notice of suspension mailed by the supreme recorder directed to Bange at Chicago. Both of these notices were mailed, if at all, to him at 2637 Park avenue, St. Louis. However, the record abounds with evidence tending to show that Bange had abandoned 2094 Wilcox avenue, Chicago, as his regular address, for Lindsley, the recorder, testifies that Mrs. Bange, plaintiff, returned to St. Louis and told him at her mother's residence here that Bange had disappeared. It appears he and his wife were not separated and she, together with her child and the family household goods, was here at the St. Louis address when contribution No. 132 was called. In view of these facts, we declared on the second appeal that the mat-

ter of Bange's regular address was a question for the jury to decide, and we adhere to that view. [See Bange v. Sup. Council Legion of Honor, 153 Mo. App. 154, 132 S. W. 276.]

Though it appears conclusively that neither Lindsley nor the supreme recorder mailed notices to Bange at the Chicago address, it does appear that Mrs. Hobie and Mrs. Bange, residing at 2637 Park avenue, forwarded such mail as was received there for Bange to him at the Chicago address. In view of this, it was declared on the first appeal that, though the notices were not mailed to the regular address of Bange, if they were, in fact, forwarded to him at the Chicago address, 2094 Wilcox avenue, and actually received by him within time to enable his paying the contribution within thirty days after it was called and thus preserve his rights, such would suffice, for it constituted actual notice of the call. [See Bange v. Sup. Council Legion of Honor, 128 Mo. App. 461, 105 S. W. 1092.] This view was adhered to on the second appeal. [Bange v. Sup. Council Legion of Honor, 153 Mo. App. 154, 132 S. W. 276.] In so far as the instructions deal with this question, they seem to be well enough, but both those given by the court of its own motion and those given at defendant's request are objectionable in the portions italicized, relating to the notice which Bange may have received, touching his suspension from the order.

It is to be noted that two notices are required under the by-laws of the order. The first is a notice to be mailed to the regular address, but which we have said is sufficient if forwarded to and actually received by Bange, informing him of the call of contribution No. 132, provided it was received on such forwarding in time to have enabled him to make the payment within thirty days, that is, the time specified by the by-laws in which payments should be made. The second notice contemplated by the by-laws is one to

the effect that the defaulting member had been sus-
pended by the action of the council, and, of course,
this notice is to be mailed after the suspension is made.
The duty of sending out this notice is cast upon the
supreme recorder of the order. The by-law (thirteen)
provides that within thirty days of the date of his
suspension, a member may be reinstated in the order
by the mere filing of a written application therefor and
the payment of the contribution, dues and fines in
default. No medical examination is required for such
reinstatement, if applied for within thirty days.
Neither is it necessary for the council to vote on the
matter. However, both a medical examination and
a vote of the council is to be had if an application
for reinstatement is made after the expiration of thirty
days and within ninety days. From this it appears
that, though a member be suspended, his right of
reinstatement continues for thirty days, upon mere re-
quest and by payment of the sums in default. Obvious-
ly, a forfeiture, not acquiesced in, may not be success-
fully sustained, unless the member has been accorded
his right to a reinstatement within the thirty days
prescribed in this law, for until the thirty days after
suspension have expired, he may acquire his former
status as a member of the order without medical ex-
amination and without submitting to the discretion
of the council thereon. In this view, we declared on
the first appeal that the by-laws contemplated notice
of the suspension should be mailed to Bange at his
regular address that he should be accorded his right
of reinstatement within thirty days thereafter. We
said, too, that if the notice of such suspension was
not mailed to the regular address, but forwarded to
him and actually received by him, it would suffice
as actual notice from the order of his suspension.
But all of this was said in contemplation of his right
to have thirty days to procure a reinstatement if de-
sired. [See Bange v. Sup. Council Legion of Honor,

128 Mo. App. 461, 105 S. W. 1092.] If both the notice of the call and of suspension were mailed in due course to 2637 Park avenue, St. Louis, and such address was Bange's regular address, then his right to reinstatement was concluded thereby at the end of thirty days from the date of suspension. On the other hand, if 2637 Park avenue, St. Louis, was not Bange's regular address and the notices of the call and suspension were mailed to him there and then forwarded to him at Chicago, it must appear that he actually received such notices, in order to conclude his right of reinstatement, and that he received them in time to have enabled him to exercise his right of reinstatement within the thirty days contemplated.

Instructions numbered three and five, given by the court of its own motion, are erroneous in this respect, in that they suggest the notice of suspension to Bange was sufficient, if received by him in any manner, without regard to time. Obviously the notice must, to fulfill the office of concluding a forfeiture, be an official one and emanate from the order. It will not suffice on this phase of the case, where a legal suspension is asserted and no acquiescence involved, that Bange "had notice of said suspension in some other way" or that he had notice "of such suspension in some other manner." The question here is not to be confused with that of acquiescing in a void suspension which operates as an abandonment of the order and insurance.

Instruction No. 9, given at the instance of defendant, deals with the question of the notice of the contribution No. 132 being mailed to 2637 Park avenue, St. Louis, and then forwarded to 2094 Wilcox avenue, Chicago, and is well enough in so far as this matter is concerned, but the concluding lines of the same instruction deal with the notice of the suspension to Bange and as if it was mailed to his regular address, informing him of such suspension. Then the part

italicized informs the jury that notice of suspension would suffice if received "in some other manner." This is erroneous for the same reasons as above stated. Moreover, such notice of suspension would not suffice even if it emanated from defendant and was mailed to the St. Louis address and then forwarded to Chicago, in event the St. Louis address was not the regular address of Bange, unless it was actually received by him and this, too, within the thirty days' limit prescribed to the end of enabling him to seek reinstatement in the order.

Much is said in defendant's instruction No. 8 about Bange's intention to make Chicago his home. All of this should be eliminated, for the question of regular address is not identical with that of domicile, which depends on intention. This was pointed out on the second appeal. [See Bange v. Sup. Council Legion of Honor, 153 Mo. App. 154, 132 S. W. 276.] The words "regular address" refer to the place where the member would be likely to get his mail, as was said on the first appeal. [See Bange v. Sup. Council Legion of Honor, 128 Mo. App. 461, 105 S. W. 1092.]

It is urged that defendant's instruction No. 11 is erroneous, but we are not so persuaded. This instruction pertains alone to the second defense set forth in the answer—that is, it treats with the matter of Bange's acquiescence in his suspension from the order and that, too, even though it was void for the omission to give the required notices pertaining to the call of contribution No. 132. When the case was here on the first appeal, the court thus expressed its view on the question of a void suspension and an acquiescence therein.

"It is the doctrine of this court, as well as of the tribunals of other jurisdictions, that by remaining silent after he is notified of a void expulsion or suspension, a member of a fraternal society will forfeit his rights in the society, including his insurance. This

is because the existence of such associations depends
on the prompt payment of dues, and they would be
destroyed if members were allowed, after a suspension
technically invalid, to retain their insurance without
paying assessments. As has been pointed out in other
opinions such a rule would put a suspended member
on a better footing than an active one, because the
former would continue to enjoy his insurance without
paying for it; whereas the latter would pay. Bange
died in March, 1905, four or five months after his sus-
pension and seven months after he had paid any dues.
If he received notice of the action of the council and
did nothing in the premises, nor treated himself as a
member of the order and bound to contribute to its
burdens, no recovery can be had on his benefit cer-
tificate. [Glardon v. Sup. Lodge, 50 Mo. App. 45;
Miller v. Grand Lodge, 72 Mo. App. 499; Supreme
Lodge v. Wilson, 66 Fed. 785.]'' [See Bange v. Sup.
Council Legion of Honor, 128 Mo. App. 461, 475, 105
S. W. 1092.]

Instruction No. 11 was given in conformity with
this view, for it appears that, though Bange lived four
or five months after his suspension, he paid no other
contributions or dues nor did anything signifying an
intention to further affiliate with the order. The prin-
ciple pertaining to the abandonment of one's rights
under his certificate of insurance, through acquiescing
in a void suspension, proceeds in accord with the
precepts of mutual duty which obtains between the co-
contributors to the insurance fund and in support of
the order. It is said that, even when an expulsion or
suspension of a member is void, he is nevertheless
under a duty to his co-contributors to affirm or dis-
affirm the act of expulsion or suspension within a rea-
sonable time, and this, too, in some distinct manner
under the circumstances. [See Mulroy v. Sup. Lodge,
28 Mo. App. 463; 1 Bacon, Benefit Societies (3 Ed.),
104; Slater v. Sup. Lodge, 76 Mo. App. 387; Lavin v.

Grand Lodge, 112 Mo. App. 1, 86 S. W. 600.] Therefore, where such suspended member takes no step of any kind to secure his reinstatement, allows contributions which had accrued and were payable prior to the date of his expulsion to remain unpaid, and neither tenders such contributions nor any subsequently accruing contribution and dues, he must be treated as having acquiesced in and consented to the sentence of expulsion or suspension and thereafter abandoned the order and his insurance contract therewith. [See 1 Bacon Benefit Societies (3 Ed.), sec. 104, and authorities supra.]

But it is urged defendant's instruction No. 11 authorizes the jury to find an acquiescence on the part of Bange in a void suspension, even though he received no notice directly from the order that he was suspended. The matter of a void suspension presupposes, of course, irregularities throughout, and among other things that a notice of such suspension was not transmitted to the insured as it should have been. This being true, the instruction should not be condemned for failing to require the jury to find the insured had received notice of suspension from the order directly, for if he actually knew the fact pertaining to it and acquiesced therein, through discontinuing the payment of contributions or further attempting to affiliate, and by treating the insurance contract as abandoned, it is immaterial how such knowledge was obtained. It is to be observed that instruction No. 11 requires the jury to find that Bange received "knowledge" of the fact of the suspension and was thereafter "aware" of it. These words as employed in the context imply, of course, that the insured knew the fact of his purported suspension, which, of course, is more than to say he had heard a mere rumor to that effect.

There can be no doubt that, if Bange knew that he was declared suspended as for the nonpayment of contribution No. 132, and with this knowledge thereafter

acquiesced therein until he died, four or five months later, such acquiescence should be treated as an abandonment by him of his rights in the premises, and this, too, notwithstanding he acquired such knowledge of the suspension from some other source than the order itself. In this connection see Konta v. St. Louis Stock Exch., 189 Mo. 26, 87 S. W. 969, where it appears the expelled member was declared to have acquiesced in his expulsion after having received notice from a friend, who merely told him of it, and without it appearing that notice was conveyed to him to that effect by the association.

An amended answer was filed in the case after its remand on the former appeal. The averments of fact in this answer are meager. It should be enough to merely suggest an amendment. If defendant is so advised, it may file an amended answer before a retrial of the cause.

For the errors in the instructions above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Allen, J.,* concurs; *Reynolds, P. J.,* not sitting.